[Crim. No. 962. First Appellate District, Division Two.—August 5, 1921.]

## THE PEOPLE, Respondent, v. EDWARD KRUVOSKY, Appellant.

[1] CRIMINAL LAW—WEIGHT OF EVIDENCE—CREDIBILITY OF WITNESSES—PROVINCE OF JURY AND TRIAL JUDGE—APPEAL.—In a criminal prosecution, the weight of the evidence and the credibility of the witnesses are, in the first instance, within the province of the jury when deliberating upon the guilt or innocence of a defendant; but after their verdict has been rendered, the determination of such questions rests solely with the trial judge in passing upon a motion for a new trial; and his conclusion as to the sufficiency of the evidence to support the verdict will not be disturbed by the appellate court, save in those rare cases where it obviously appears that the testimony upon which the conviction was had is so inherently improbable as to be impossible of belief.

[2] ID.—SCOPE OF CROSS-EXAMINATION—FAILURE TO OBJECT—APPEAL.
The appellate court is not required to determine whether or not
the cross-examination of a witness for the defense covered too
broad a field, where that objection was not made to the questions,
or where the answers to the questions to which that objection was
made were not in the least prejudicial to the defendant.

[3] ID.—IMPEACHMENT OF WITNESS—ADMISSION OF SIGNED STATEMENT
PREVIOUSLY MADE.—The introduction in evidence, for the purpose
of impeachment, of a signed statement previously made by a
witness is properly permitted over the objection of the defense
that it was "secured from the man under duress, that he
signed it against his will, that he was beaten and abused by the
police before he signed it, and the only reason that he signed it
was so that they might cease their brutal treatment," where there
is no evidence of any kind offered to sustain these charges.

[4] ID.—PROOF OF OTHER OFFENSES—WHEN ADMISSIBLE.—While it is
the general rule that evidence of an offense other than the one
for which the defendant is being tried may not be admitted in
evidence against him, where several crimes are intermixed or
blended with one another, or connected so that they form an in-
divisible criminal transaction, and full proof by testimony, whether
direct or circumstantial, of any one of them cannot be given with-
out showing the others, evidence of one or all of them is admis-
sible against a defendant on trial for any offense which is itself
a detail of the whole criminal scheme.

[5] ID.—RAPE—OFFENSES COMMITTED AGAINST WITNESS—EVIDENCE.—
In a prosecution for the crime of rape, where the testimony of
a witness other than the prosecutrix bearing upon the crime with
which the defendant is charged cannot be given without the recital
of offenses against herself, such testimony is admissible.

[6] ID.—CONSPIRACY—PROOF.—In proving a conspiracy it is not neces-
sary that proof be made that the parties met and actually agreed
to undertake the performance of the unlawful act, but a con-
spiracy may be shown by proof of facts and circumstances
sufficient to satisfy the jury of the existence of the conspiracy,
leaving the weight and sufficiency of the evidence to the triers of
the questions of fact.

[7] ID.—RAPE—MORAL DELINQUENCY OF WITNESS—EVIDENCE.—In a
prosecution for the crime of rape, evidence of the unchastity of
the prosecutrix is admissible as bearing upon the question of con-
sent, but evidence of her moral delinquency, or of the moral de-
linquency of any other witness, is inadmissible as affecting her
general credibility as a witness.

4. Evidence of other crimes in prosecution for rape or assault
with intent to commit rape, notes, 8 **Ann. Cas.** 459; 18 **Ann. Cas.**
442; **Ann. Cas.** 1915D, 164; 62 **L. R. A.** 236; 48 **L. R. A. (N. S.)** 236.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Edmond H. Lomasney for Appellant.

U. S. Webb, Attorney-General, John H. Riordan, Deputy Attorney-General, Matthew I. Brady, District Attorney, and Stanislaus A. Riley, Deputy District Attorney, for Respondent.

LANGDON, P. J.—This is an appeal from a judgment of conviction of the crime of rape. The first objection of the appellant that the verdict of the jury is contrary to the evidence may be disposed of briefly. The verdict is supported by the testimony of Jessie Montgomery, the prosecutrix, and by the testimony of Jean Stanley, who was her companion on the night of the crime. The jury believed this testimony, which was corroborated in part by the physical condition of the two women, who were bruised and beaten when found by the police within a short time after the assaults upon them, and by other evidence. Counsel for appellant argued to the jury and now argues to this court that the testimony of the two girls should not be believed. It is urged that the testimony of the prosecutrix in the present case differs from her testimony in the trial of a similar case against another defendant for a crime committed at the same place on the same evening. The testimony in the other case was introduced in evidence in the present case. Any apparent contradiction between it and the testimony in the present case was explained by the witness herself upon the stand. The argument of the appellant as to the improbability of certain testimony given by the prosecutrix concerning the matter of defendant's return to the house where she was lying helpless after his earlier assault, and his subsequent assault upon her, together with his argument as to the improbability of the testimony of the prosecutrix with reference to being forced to drink intoxicating liquor, was made to the jury, but evidently the testimony did not seem so improbable to them as to destroy its weight.

[1]   The weight of the evidence and the credibility of the witnesses are in the first instance peculiarly within the province of the jury when deliberating upon the guilt or innocence of a defendant.   After their verdict has been rendered, the determination of such questions rests solely with the trial judge in passing upon a motion for a new trial. His conclusion as to the sufficiency of the evidence to support the verdict will not be disturbed by this court save in those rare cases where it obviously appears that the testimony upon which the conviction was had is so inherently improbable as to be impossible of belief.   (People v. Von Perhacs, 20 Cal. App. 48, [127 Pac. 1048].)   In the present case the jury in its verdict, and the trial judge in denying the motion for a new trial, passed upon the weight and sufficiency of the testimony against the defendant.

[2]   The second objection made by appellant is as to the scope of the cross-examination which was permitted of the witness Allen MacDonald.   It is not necessary for us to decide whether or not this cross-examination covered too broad a field, for the reason that objection was made to but two questions upon that ground, and the answers thereto permitted over the objections of defendant, were not in the least prejudicial to the defendant.   The prosecutrix had testified that the defendant had assaulted her and had later left the house; that she was lying on a mattress on the floor, stripped of her clothing and bruised and exhausted; that after a time the defendant and the witness MacDonald returned to the house and again assaulted her and remained there until they were taken into custody by the police.   The defendant had testified to having been at the house in question during the hours covered by the testimony of the prosecuting witness, and had admitted leaving the house and returning to it again with MacDonald, but had denied the assaults.   He stated that he returned to the house to get his overcoat, which he had forgotten.   MacDonald was put upon the stand by the defendant and interrogated regarding his meeting with defendant on the street after defendant had left the house and regarding their return to the house together.   He testified as to what occurred from the time they re-entered the house until the arrival of the police.   Upon cross-examination, the district attorney asked: "Q. Was that the first occasion on that evening when you

saw Kruvosky, when you met him at Ninth and Howard?"
Objection was made to this question upon the ground that it
was not cross-examination and did not relate to anything
testified to on direct examination.  The objection was over-
ruled and the answer was: "No, sir."  No prejudice could
possibly have been suffered by the defendant by reason of
this answer, because he himself had testified that MacDonald
had been at the house and that defendant himself had been
there during the hours covered by the testimony of Jessie
Montgomery and Jean Stanley.  No further objection was
made to the cross-examination upon this ground until the fol-
lowing question was asked the witness: "Now, what part
of the house did this party go into?"  This was objected to
on the ground that the witness had not been examined
on direct examination about anything regarding the
"party."  The objection was overruled and the answer was:
"They went into the room as you enter on the left—the
front room on the left."  Certainly, the defendant was
not prejudiced by this answer.  He had himself testified that
when he arrived with the others at the house where the
crime was alleged to have been committed, the party en-
tered the house and went into the front room "on the left-
hand side."  There was no dispute about this fact whatever,
and this answer by the witness MacDonald could in no way
have been prejudicial to the defendant.  Later in the cross-
examination objection was made by the attorney for the
defendant to the use by the district attorney of the word
"party" in referring to those who were at the house at the
time under discussion.  The objection was stated as follows:
"Now, if your Honor please, I object to the 'party,' and ask
that the district attorney say who they were.  There were
several there."  The district attorney amended his question
so as to refer to "the party comprising Kruvosky and his
companions," to which counsel objected on the ground that
"his companions" was not a sufficiently definite term, and
asked that the parties be named.  There was no objection in-
terposed to any of the other questions asked upon cross-
examination.  [3]  The prosecution introduced in evidence,
for the purpose of impeachment, a signed statement previ-
ously made by the witness.  Counsel for defendant objected
to the introduction of this statement on the ground that
it was "secured from the man under duress, that he signed

it against his will, that he was beaten and abused by the police before he signed it, and the only reason that he signed it was so that they might cease their brutal treatment." There was no evidence of any kind offered to sustain these charges. The record contains not one word upon these matters except the statement of counsel. Under such circumstances, this objection was properly overruled.

[4] The next objection is to the admission of evidence as to an assault with intent to commit rape made upon Jean Stanley, the companion of the prosecuting witness, by the defendant and others at the same house where the attack upon Jessie Montgomery was made, and at about the same time. While it is the general rule that evidence of an offense other than the one for which the defendant is being tried may not be admitted in evidence against him, there are certain exceptions to this rule. An exception applicable to the present case is well stated in the case of *People* v. *Ciulla*, 44 Cal. App. 719, [187 Pac. 46], where it is said: "If several crimes are intermixed or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, evidence of one or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme." [5] In the present case the testimony of Jean Stanley bearing upon the crime with which the defendant was charged could not be given without the recital of offenses against herself. The whole brutal story is so interwoven, and its incidents are so inseparable, that proof of the crime with which defendant is charged here must necessarily involve a reference to other offenses by him, such as assault with intent to commit rape, assault and battery, illegal purchase of intoxicating liquors, etc. But under the rule laid down in the case of *People* v. *Ciulla, supra,* this testimony may, nevertheless, be admitted under the circumstances shown here.

Furthermore, the evidence in the record before us is sufficient to establish a conspiracy on the part of the defendant and others to commit the crime with which he is charged. [6] In proving a conspiracy it is not necessary that proof be made that the parties met and actually agreed to undertake the performance of the unlawful act, but a

conspiracy may be shown by proof of facts and circumstances sufficient to satisfy the jury of the existence of the conspiracy, leaving the weight and sufficiency of the evidence to the triers of the questions of fact. (*People* v. *Schmidt*, 33 Cal. App. 426, 444, [165 Pac. 555].) In the present case the evidence shows that the crime against Jessie Montgomery and the crime against Jean Stanley were both committed as part of a plan and design entered into by the defendant and others. The evidence showed that the defendant and several other men held a whispered conversation in the Stroller's Cafe, after meeting the girls, which conversation was not overheard by the girls. Shortly thereafter the girls and their escorts left the cafe and entered an automobile. The defendant and several other men also left the cafe and entered the automobile, which was driven to the house on Howard Street where the crime was committed. The men entered and the girls were later persuaded to enter. The door was opened by a man in charge of the house and when the party entered the doors were locked after them. The girls later found, upon trying to escape, that all the doors had been locked. Intoxicating drinks were served frequently and regularly and one of the girls was forced to drink, after she had refused to drink any more willingly. Several of the men assisted in this compulsion. One of the girls was then taken into the kitchen and told to remove her clothing and dance for the men there. Upon her refusal she was knocked down by a blow from the defendant. The other girl, upon coming to her rescue, was struck a severe blow in the face, which loosened her teeth and broke her nose and otherwise injured her. One girl was then dragged into the bathroom, where she was assaulted by the defendant. The other girl was attacked by several men and succeeded in escaping through a window, which she broke. The men had, in the meantime, turned their attention to the girl who was lying in the bathroom stunned—Jessie Montgomery—and upon becoming conscious she found herself in another room upon a mattress, where she was again assaulted by the defendant and others, after they had torn off all of her clothing. It appears that one of the men whom she charged with having assaulted her left the house at one time and stood outside on guard to learn if the noise and cries of the girls could be heard from the out-

side. It was he who turned out the lights after one of
the girls had escaped through the window and who warned
the others to leave as "the cops" were coming.

Substantially the same facts were considered by division
one of this court in the case of *People* v. *Murphy, ante,* p.
474, [200 Pac. 484], which was a prosecution of one of
the other men who assaulted Jessie Montgomery upon this
evening. In that case the court held that the conspiracy was
established, and the testimony of Jean Stanley regarding an
attempted crime against herself was properly admissible
upon that theory.

[7] Appellant objects to an instruction by the trial court
"that the moral delinquency of the girl complainant, if
there be such moral delinquency, is not to be considered as
affecting her credibility." In this state in cases of this
character the rule is that evidence of the unchastity of the
prosecutrix is admissible as bearing on the question of con-
sent, but evidence of her moral delinquency is inadmissible
as affecting her general credibility as a witness. (*People*
v. *Murphy, ante,* p. 474, [200 Pac. 484].) While we do not
lend our approval to the instruction as given in this case,
yet for the reasons given in the case of *People* v. *Murphy,*
*supra,* we do not believe that it was prejudicial.

Appellant's next objection is predicated upon the refusal
of the trial court to permit the filing of certain affidavits in
support of defendant's motion for a new trial. The affi-
davits were sworn to by Ludwig Achsman and Frieda Achs-
man, his wife, and were to the effect that on a certain
date there had been residing at their home at 67 Crocker
Street, San Francisco, a young woman who had given her
name to them as Jeanette Warden; that from the pictures
appearing in the newspapers of the witness Jean Stanley,
affiants believe that Jeanette Warden and Jean Stanley are
one and the same person; that said Jeanette Warden worked
at the Sanitary Laundry at the time she resided at the
home of affiants; that while said Jeanette Warden was so
residing at the home of affiants, the said Ludwig Achsman
discovered a strange man in his kitchen one morning at
about 4 o'clock; that this man was in his shirt-sleeves and
that the kitchen of said residence was a room next to the
room occupied by Miss Warden; that said Ludwig Achsman
pursued said strange man into the street but failed to catch

him; that later in the day when Miss Warden returned from her work, the said Achsman accused her of knowing this man and of having received him in her room. She replied that the man must have been a burglar, and later said that she would rather go to jail than tell anything she knew. Said Achsman then told Miss Warden to leave his home, which she did.

Appellant contends that these affidavits furnished evidence impeaching the witness Jean Stanley, and that their subject matter was newly discovered evidence, material to the defense. This argument is predicated upon the fact that in the cross-examination of Miss Stanley she had been asked if she had ever worked at the Sanitary Laundry, to which she had replied in the affirmative. Witness was then asked: "At the time you worked in the Sanitary Laundry where did you reside? A. I lived at the Osirin Apartments, at Sixteenth and Mission." Appellant contends that because the affidavits indicate that Miss Stanley lived at 67 Crocker Street for at least a part of the time that she worked at the Sanitary Laundry, therefore such affidavits contradict the testimony of the witness above quoted. It is possible, of course, that the witness may have moved to the Osirin Apartments after leaving 67 Crocker Street. Appellant contends, however, that at another place in the testimony of this witness she enumerated the places at which she had lived since her arrival in San Francisco, and that 67 Crocker Street was not enumerated among them; and that she stated that the places of residence which she so enumerated were the only places where she had lived in San Francisco. Even though this be true, it was not a contradiction in a material matter. The affidavits themselves state that the young woman known as Jeanette Warden lived at 67 Crocker Street for only about ten days, and it does not appear that this matter is of any materiality. Under these circumstances, this portion of the affidavit, taken in connection with the testimony of the witness, was clearly insufficient to cause the court to grant the defendant a new trial, and the remaining portions of the affidavit were clearly inadmissible for any purpose, and it was doubtless because of their inclusion therein that the trial court properly ordered the affidavits stricken from the record. Jean Stanley was not the prosecutrix. Had she been, evidence of sexual relations with men other than the defendant might have been relevant upon

the issue of consent, had that been made a defense. But the defendant not being charged here with having assaulted Jean Stanley, evidence of her sexual relations with another man was quite irrelevant and immaterial. The code provides the method of impeaching a witness (sec. 2051, Code Civ. Proc.), namely, by contradictory evidence or by evidence that his (her) general reputation for truth, honesty or integrity is bad, *but not by evidence of particular wrongful acts,* except that it may be shown by the examination of the witness, or the record of the judgment, that he (she) had been convicted of a felony. Appellant contends that these affidavits were to lay a foundation for impeachment of the witness, but we think they were not admissible for such purpose. At most, they furnished inconclusive and merely circumstantial evidence of a particular wrongful act on the part of the witness.

The foregoing constitutes the specific assignments of error made by the appellant. In addition, he complains of the condition of the public mind at the time of the trial of the defendant and of the effect upon the rights of the defendant. No motion was made for a change of venue. Reference is made to the sensational accounts printed daily in the newspapers about matters connected with the orgy at the Howard Street shack. The jury was carefully instructed by the trial judge not to read the newspapers, nor to discuss the case with anyone, and there is no evidence in the record that any of them disobeyed these instructions. The record contains so much that is brutal and revolting, that it would be strange indeed if there had not been an outburst of indignation from all good citizens. These things are inherent in the crime itself. But despite the righteous indignation that must be aroused in all decent persons by the sordid testimony contained in the record in this case, there is nothing in the record to suggest that the defendant was not accorded a fair trial in every particular. On the contrary, the record is extraordinarily free from error, and every substantial right of the defendant was therein fully protected and freely accorded. The record overwhelmingly convicts him. There could be but one verdict upon such evidence, and that the jury has correctly rendered.

The judgment and order denying a new trial are affirmed.

Nourse, J., and Sturtevant, J., concurred.