166 Cal.App.2d 334 (1958)
333 P.2d 82
THE PEOPLE, Respondent,
v.
GEORGE E. HURLBURT, Appellant.
Docket No. 3535.
Court of Appeals of California, First District, Division One.
December 18, 1958.
*335 Stanley Brooks, under appointment by the District Court of Appeal, for Appellant.
Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.
PETERS, P.J.
[1a] In a prosecution for a violation of section 288 of the Penal Code the trial court ruled that defense counsel could neither cross-examine the complaining witness nor introduce evidence on the question as to whether the witness had, in the past, made similar charges against other men, which charges the witness had admitted were false or were proved to be false. In our opinion such rulings were erroneous, and under the facts, prejudicial.
As is usual in such cases, the prosecution was forced to rely primarily on the testimony of the complaining witness to establish its case, while the defense, by necessity, was forced to rely almost entirely on the denials of the defendant. Thus, the credibility of the complaining witness was one of the basic issues presented to the jury.
The alleged victim, Maria, on November 23, 1957, the date of the charged offense, was 9 years old. On that Saturday evening Maria's mother left Maria and several younger children with the defendant at his apartment for him to care for while the mother went out for the night. When the mother brought Maria and the other children to defendant's apartment, the defendant was in the kitchen of his residence having drinks with his newly married daughter, her husband, and a neighbor. Defendant frankly admitted that he had had several drinks that evening, but there is no evidence that he was intoxicated. Shortly after Maria's mother left, the daughter and her husband left on a date, intending to return home later that evening, and the neighbor returned to her home. Almost immediately thereafter three of the youngest children were put to bed in an upstairs bedroom by Maria and defendant. Maria then undressed, put on her nightgown, and went to bed. Defendant returned downstairs and prepared to retire on the sofa. Maria had difficulty getting to sleep and came downstairs to get something to eat and to watch television. In a short time the electricity went off. It is an admitted fact that there was an electrical failure in the area that night which lasted for some time.
*336 When the lights went out Maria returned upstairs and went to sleep. Shortly after the lights went out a neighbor called at the defendant's apartment and borrowed a candle from defendant, remaining some time to talk to defendant. The defendant was downstairs when the witness arrived and gave her the candle.
Maria testified that while the lights were still out she was awakened by the defendant who was pulling up her nightgown, and that then the defendant committed the indecent acts upon her body which constitute the basis of the 288 charge. Maria also testified that while the defendant was committing these acts she told him that she had to go to the lavatory, that he desisted, and that when she returned from the bathroom he made no attempt to resume the acts, but returned downstairs in search of cigarettes.
The time intervals are not too clear from the testimony, but apparently before the acts are supposed to have occurred the adult daughter of defendant had telephoned, stating that she and her husband would be right home. Apparently the lights went out about 10:40 and the defendant's daughter and her husband arrived home about 10:45 p.m. Maria admitted that when the daughter came home, Maria got up and kissed her and talked to her, and, although she was frightened by what had happened, she said nothing about it.
It also appears that Maria's mother came to defendant's apartment Sunday, and that she and Maria spent that day with defendant and spent Sunday night at his residence. Admittedly Maria, on Sunday, said nothing to her mother about what she claims had happened on Saturday evening. Complaint was first made on Monday morning when Maria and her mother returned to their home.
The defendant flatly denied the testimony of Maria and attempted to account for all of his time and actions on the night in question.
During the cross-examination of Maria counsel asked the witness whether she had not made prior false accusations of a similar nature against other men. The precise questions asked, the objections and the court rulings were as follows:
"Q. Maria, have you ever lied to your mother concerning a thing of this nature? A. No. MR. RUDDEN [Prosecutor]: Incompetent, irrelevant and immaterial. THE COURT: Just a minute. MR. RUDDEN: And it is objected to for that reason. *337 THE COURT: Yes, it is objectionable. The objection will be sustained and the answer will be stricken and the jury instructed to disregard the answer.... Q. Now, Maria, do you recall telling Betty and your mother some time ago concerning the identical same facts as these facts you have testified to? MR. RUDDEN: Objected to as improper cross-examination, compound, complex and calling for the opinion and conclusion of the witness. THE COURT: Yes, I think I'll have to sustain the objection, counsel. MR. PERASSO [Defendant's counsel]: On what basis, your Honor? THE COURT: On all of the grounds.... The Court will sustain the objection on all the grounds offered. If you want to cross-examine the witness or impeach her you are certainly entitled to do that, but I do not think that the question is proper at all. MR. PERASSO: I will rephrase it. THE COURT: Or, if you want to establish a motive there is a way to do that too. MR. PERASSO: Q. Did you once before, Maria, accuse someone else of the very same thing? MR. RUDDEN: Incompetent, irrelevant and immaterial. THE COURT: The objection will be sustained. MR. PERASSO: I won't pursue that at this moment."
Later in the trial, upon further cross-examination of this witness, the defendant's counsel attempted to establish the fact that the complaining witness had prior knowledge of the nature of the charge to which she had testified. Objections were properly sustained to these questions, whereupon counsel made an offer of proof. The principal offer was to show that the complaining witness had prior knowledge of the nature of the offense in question, but counsel also offered to show that the witness had made similar charges in the past which had proved to be false. Thus, counsel offered to show that in the immediate past she had made an identical charge against Bud Calleen, whom her mother had "been running around with or going with," and "she made the identical statement at a prior time against another person after which she said it was a lie." The trial court sustained the prosecuting attorney's objection, stating "I think you are entitled to proceed to attack the girl's reputation in other ways, but not by a particular act or anything of that sort."
[2] The sole point urged on this appeal is that it was error to exclude evidence of the fact that the complaining witness had made prior false accusations that other men had committed acts against her similar to those charged against the defendant. Respondent supports the ruling by contending that specific acts of wrongdoing may not be used to impeach a witness. *338 This is undoubtedly the general rule, and is codified in this state. Section 2051 of the Code of Civil Procedure provides: "A witness may be impeached by the party against whom he was called,... by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full and unconditional pardon, based upon a certificate of rehabilitation." The rule declared by this section is a sound one, but it is not absolute. In sex cases of various sorts, exceptions to its application have been recognized. As early as 1856 the California Supreme Court referred with approval to the language first used by Lord Hale many years before to the effect that no charge is more easily made and more difficult to disprove than a sex charge, particularly if made by a young child. The court said that "In such cases the accused is almost defenceless." (People v. Benson, 6 Cal. 221, 223 [65 Am. Dec. 506].)
Of course, it has been the rule in this state for many years that it is reversible error to fail to instruct that because such charges are easy to make and hard to disprove the testimony of the prosecutrix must be carefully scrutinized. (People v. Putnam, 20 Cal.2d 885 [129 P.2d 367]; People v. Garrett, 27 Cal. App.2d 249 [81 P.2d 241].) In fact, even qualifying the normal instruction by stating that, nevertheless if the jury believes that the defendant is guilty beyond a reasonable doubt a guilty verdict should be returned, is reversible error. (People v. Lyons, 47 Cal.2d 311 [303 P.2d 329].)
Several times the California courts have insisted that the defense be allowed the widest latitude in the cross-examination of the prosecutrix in such cases. (People v. Baldwin, 117 Cal. 244 [49 P. 186]; People v. Goldberg, 110 Cal. App.2d 17 [242 P.2d 116]; People v. Vaughan, 131 Cal. App. 265 [21 P.2d 438].)
These cases are cited not because they are direct authority on the issue here presented but because they indicate that the California courts have not been blind to the possibility that a prosecutrix may be untruthful in such cases, and that a defendant is practically powerless to defend against such a charge. Dean Wigmore felt so strongly about the problem that he recommended that the rule be, by statute if necessary, that the complaining witness, in all such cases, should be subjected *339 to a psychiatric examination. (III Wigmore on Evidence, § 924a, p. 459.[1])
The rule contained in section 2051 is a sound one, and exists in most jurisdictions. It is that, while a witness may be impeached "by evidence that his general reputation for truth, honesty, or integrity is bad," evidence of specific acts of bad character, except as to conviction of a felony, is generally not admissible. [3] But where the issue goes beyond general reputation and involves the truthfulness of the basic fact in issue, evidence of particular wrongful acts may be admissible. [4] Thus, evidence of specific acts of prior unchastity of a complaining witness in statutory rape or 288 cases is not admissible, because consent is not involved. (People v. Harlan, 133 Cal. 16 [65 P. 9]; People v. Benc, 130 Cal. 159 [62 P. 404]; People v. Johnson, 106 Cal. 289 [39 P. 622]; People v. Bell, 96 Cal. App. 503 [274 P. 393]; People v. Williams, 52 Cal. App. 609 [199 P. 56].) But if consent is the issue, as it is in a forcible rape charge, evidence of prior particular acts of unchastity is admissible on the issue of consent. (People v. Murphy, 53 Cal. App. 474 [200 P. 484]; People v. Kruvosky, 53 Cal. App. 744 [200 P. 831]; People v. Walker, 150 Cal. App.2d 594 [310 P.2d 110]; People v. Battilana, 52 Cal. App.2d 685 [126 P.2d 923].)
On the specific question of whether specific acts of making false sex charges is or is not admissible, Dean Wigmore (III Evidence, § 963, p. 519) indicates that there is a conflict of authority.[2] There is substantial authority that such evidence is admissible not simply to impeach the prosecutrix, but as independent evidence that the charged crime was not in fact committed. (People v. Evans (1888), 72 Mich. 367 [40 N.W. 473], appears to be the leading case. In that case the defendant was charged with the rape of his 14-year-old daughter. Counsel asked the prosecuting witness (p. 477 [40 N.W.]): "Rose, haven't you made other charges of this same nature *340 against other men that were perfectly innocent?" An objection was interposed, to which the trial court ruled: "You may ask the question, but you will have to accept her statement," whereupon the witness answered in the negative. Later another witness was asked (p. 478 [40 N.W.]): "Did you ever have any conversation with Rose about a charge she made at one time against George Evans having made a similar assault upon her?" Answer: "Yes, sir; she said ____" An objection was sustained and the trial court did not allow the question or answer. An offer of proof was made by defendant's counsel that the prosecuting witness had made similar accusations against a number of men, family members and others. The Michigan Supreme Court reversed, stating (p. 478 [40 N.W.]): "If she was accustomed, and had on numerous occasions, as claimed by counsel for ... [defendant], made statements charging, not only her brothers, but numerous other men of that community, with other similar offenses, and then admitted the falsity of such charges, it would have a tendency to show a morbid condition of mind or body, and go a long way in explaining the charge, which, under the circumstances, and the surroundings shown to exist, seems almost unaccountable."
The Evans case was reaffirmed in People v. Wilson, 170 Mich. 669 [137 N.W. 92, 41 L.R.A.N.S. 216]. There at the trial the question was posed to the prosecutrix (p. 92 [137 N.W.]): "haven't you made the same complaint against a number of other men?" An objection was sustained on the grounds that a witness may not be impeached by showing her unchastity. In reversing, the court said (p. 93 [137 N.W.]): "Counsel for the people cite cases to the effect that other specific acts of unchastity cannot be shown in such a case; also, that the girl's general reputation for unchastity is not involved in a case where the girl is under the age of legal consent. We agree ... but ... do not understand by the line of evidence offered that any attack was being made upon the chastity of this girl. As cross-examination, as laying the foundation for collateral impeachment, and as an offer of independent evidence relating to similar charges and their denials, we are constrained to hold that the court erred in excluding the offered testimony." (See also State v. Poston, 199 Iowa 1073 [203 N.W. 257]; Dawes v. State, 34 Okla. Crim. 225 [246 P. 482].) There are contrary cases. (See Peters v. State, 103 Ark. 119 [146 S.W. 491], and cases cited in III Wigmore on Evidence, § 963, note 2, p. 520.)
*341 The specific problem does not seem to have been fully discussed by the California cases, but there are analogous situations where evidence of specific wrongful acts has been held admissible. Thus, in a forcible rape case, it has been held that the question asked of the prosecutrix if she had not conspired "to put up jobs" on defendant in the past should have been allowed as laying the foundation for independent evidence that she had. (People v. Lambert, 120 Cal. 170 [52 P. 307].) In People v. Gardner, 98 Cal. 127 [32 P. 880], a statutory rape case, it was held that testimony of a third party witness to the effect that in the past the prosecutrix was "putting up jobs" on defendant to extort money from him would have been admissible to show interest or prejudice had a proper foundation for the question been laid. In People v. Adams, 92 Cal. App. 6, a forcible rape case, it was held that it was proper for the defendant to show that a conspiracy existed between the prosecutrix and others to extort money from the defendant. [5] It is also settled that an attitude of animosity toward the defendant by the prosecutrix may be shown. (People v. Reyes, 194 Cal. 650 [229 P. 947], a 288 case; see also People v. McAfee, 82 Cal. App. 389 [255 P. 839], an incest case; People v. Williams, 52 Cal. App. 609 [199 P. 56], a statutory rape case.) It has also been held that the fact the prosecuting witness has been coached is relevant on the basic issue of the truth of the charge. (People v. Watrous, 7 Cal. App.2d 7 [45 P.2d 380]  a 288 case involving a 4-year-old girl; People v. Wilder, 151 Cal. App.2d 698 [312 P.2d 425].) In these various situations the state of mind of the prosecutrix may be shown by specific acts.
There are two California cases that mention the problem here involved. In People v. Russell, 80 Cal. App. 243 [251 P. 699], a 288 prosecution, it is stated (p. 246): "While the prosecutrix was being cross-examined she was asked if she had not made similar charges against other men and that she had been found guilty of immoral behavior. It is settled law that such evidence was not admissible as going to the credibility of the witness." There is no further analysis of the problem. The only authority cited for the quoted rule is People v. Murphy, 53 Cal. App. 474 [200 P. 484]. That case simply held that the general moral delinquency of the complaining witness cannot be admitted to impeach her testimony. Thus, the authority cited does not support the rule that prior false accusations by the prosecutrix of the same type may not be inquired into in a 288 case.
*342 A somewhat similar statement to the one above quoted appears also in People v. Stice, 161 Cal. App.2d 610, 612-613 [327 P.2d 201], in which the appellate court justifies the exclusion of such testimony on the ground that a "witness for the People may not be impeached on cross-examination by questions as to specific acts of unchastity." Obviously, the fact that prior unchaste acts may not be used to impeach is not relevant to the question of whether or not prior false accusations of the same type may be admissible.
The attorney general concedes that evidence of prior false accusations in such a case might have probative value, and is relevant on the issue involved, but quite properly points out that probative value and relevancy do not necessarily determine admissibility. We agree. The attorney general then argues that the only purpose of such evidence is to impeach the prosecutrix on her general reputation and that section 2051 of the Code of Civil Procedure precludes impeachment by proof of specific untruthful acts.
[1b] This is not a complete answer to the problem. As already pointed out, the California courts have been quite liberal in admitting evidence that may be impeaching, but does more than merely generally impeach. Thus, where the state of mind of the prosecutrix is relevant, showings of possible motives for the charge, instances of extortion by the prosecutrix against the defendant, animosity of the prosecutrix, and the possibility that the witness has been coached, all have been held admissible. None of these is of as great probative value or relevancy as evidence of prior false accusations of the same charge involved in the main case. Such evidence is not offered for the purpose of impeaching or discrediting the general character or reputation of the witness, but is offered to disprove the very charge before the court. It is relevant as to the state of mind of the prosecutrix. Because of its high degree of relevancy and its high probative value, such evidence should be admitted. From the very character of the offense involved the jury has very little to go on in such cases. They have usually nothing more than the testimony of a young child and the denials of the defendant. This fact, which, as already pointed out, has frequently been recognized by the courts and text writers, indicates that a liberal rule should be adopted so that the jury have before it as much relevant information as is legally permissible so that it can reach a just verdict. The point does not have to be labored that the chances of the verdict of the jury being correct will definitely *343 be enhanced if the jury has before it the fact that the prosecutrix had, on occasions in the past, made similar charges against the defendant or others which were subsequently denied or proved false. The courts have been quite liberal, and properly so, in allowing the admission of evidence of the prior acts of the defendant toward the prosecutrix. (People v. Anthony, 185 Cal. 152 [196 P. 47].) Equally relevant, and for the same reason, is evidence that the prosecutrix has in the past lied about the type of acts charged to defendant.
In stating that the courts should be liberal in this field in order that the ends of justice best be served, a word of warning is called for. Because of the fear that a grave injustice to the defendant may occur, the courts should not forget the rights of the People. There are men who do commit the sort of acts here involved. Such men are a danger to society, and should be kept out of circulation. The State has a duty and a real interest in protecting its young people from such detestable and criminal behavior. The courts should protect this interest. While it frequently has been recognized that charges of this type are easy to make and hard to disprove, it should also be noted that charges that the child prosecutrix has lied about such matters in the past can also be easily made. The courts should be vigilant in seeing to it that the privilege of cross-examination here approved should not be abused. But, weighing all of these possibilities, it is our opinion that the ends of justice will best be served if the jury is permitted to know that in the past this seemingly young and innocent child has made false charges about such matters. Such rule, in our opinion, does not violate the sound provisions of section 2051 of the Code of Civil Procedure.
The judgment and order appealed from are reversed.
Bray, J., and St. Clair, J. pro tem.,[*] concurred.
Respondent's petition for a hearing by the Supreme Court was denied February 11, 1959.
NOTES
[1] One state, at least, has held that it was error not to submit the prosecutrix to a psychological examination to test her truthfulness. The state is Indiana. (Burton v. State, 232 Ind. 246 [111 N.E.2d 892].) This case was later overruled in Wedmore v. State, ___ Ind. ___ [143 N.E.2d 649]; see also People v. Stice, 161 Cal. App.2d 610 [327 P.2d 201], where the defendant's motion in a 288 case to have the prosecutrix subjected to a psychiatric examination was denied and the appellate court held the "matter was one within the discretion of the trial judge." (P. 613.)
[2] He indicates that such testimony is offered not as to general reputation but to indicate the state of mind of the prosecutrix which "partakes of the nature of corruption and of bias."
[*] Assigned by Chairman of Judicial Council.