[Crim. No. 2955.   Third Dist.   June 8, 1959.]

THE PEOPLE, Respondent, v. THOMAS SCARBOROUGH, Appellant.

James H. Tredinnick, under appointment by the District Court of Appeal, and James M. Woolley for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and R. M. Momboisse, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Thomas Scarborough was found guilty by a jury of the crimes of simple kidnapping, forcible rape and robbery in the second degree. He has appealed from the judgment entered and from the order of the court denying his motion for a new trial.

The victim, an employee of a Sacramento hotel, testified that she left her place of employment about midnight. She walked to the Greyhound Bus Depot where she intended to hire a taxicab to take her to her home in Broderick. She was unable to get a cab at the bus depot, but she was told that she could get one at the Southern Pacific Depot. While walking on "I" Street, between 5th and 6th Streets, she heard footsteps behind her, and as she turned someone grabbed her by the throat. She struggled with her assailant and then lost consciousness. She recovered momentarily and saw a colored man, she identified as the defendant, kneeling beside her. She again must have lost consciousness because she did not remember anything until she was in the park near the Southern Pacific Depot. At that time her assailant was pulling her clothes down. He then threatened to kill her. The victim testified further that she was raped twice. After the defendant completed the acts he rolled over on his side, opened her handbag and took the loose change that was in it. He also took a watch that she was wearing. When the victim asked him not to take it because she had not completed paying for it, he allegedly told her that he would help her pay for it. Other conversation ensued between the two. The victim told her assailant that her name was Hester Hunter, that she lived in Broderick, and that she had three children. After the incident the victim walked with her assailant to the corner of 5th Street, where he turned off. She then walked to her home in Broderick. The next day she reported the attack to her ex-husband and to the police. The police officers showed her several hundred pictures and she made a tentative identification of the defendant as her assailant. The defendant was arrested on September 15, 1958, which was two days after the incident. He was informed of the robbery, and he told the police that he had known the victim for two years. He also allegedly told the police that he had intercourse with the victim, but he alleged that she had consented to it. At the trial he denied the incident. After his arrest the victim picked the defendant out of a police lineup and identified him as her assailant.

Appellant's first contention is that the evidence is insuffi-

cient to sustain the judgment of conviction. He makes a lengthy and vigorous attack upon the testimony of the victim and argues that it was inherently improbable. He points to testimony that the victim did not report the alleged attack until after she had consulted her ex-husband the next day and to her failure to secure a medical examination after the alleged attack.

We are unable to agree with appellant's contention that the testimony of the victim was inherently improbable. Her testimony, if believed by the jury, was sufficient to support a conviction on each of the three counts. Appellant's argument is merely one as to the weight of the evidence, and it was for the jury to determine the weight of the testimony of the victim. The victim testified that she was attacked while she was walking on ''I'' Street; that she lost consciousness; that when she regained consciousness she was in the park; and that her assailant raped her twice. Taking the victim to the park would constitute kidnapping. The crime of rape would also have been committed. The victim was knocked unconscious. Her assailant threatened to kill her. When she regained her senses in the park, her assailant was pulling her clothes down. He then committed the acts. There is no question that force had been used prior to the actual acts. The victim was just regaining consciousness when the first act occurred. The evidence is sufficient also to show that appellant forcibly took the watch and small change of the victim. All three counts were to some extent interrelated, but it is a reasonable inference from the evidence that all three crimes were committed with force and against the will of the victim.

Appellant next contends that the court erred in permitting the prosecution to introduce in evidence a colored photograph of the victim which showed bruises on her face and eye. Appellant contends that the only purpose was to inflame the jury, since there was sufficient corroborative evidence in the record as to the bruises. As stated in *People* v. *Carter,* 48 Cal.2d 737, at page 751 [312 P.2d 665], the rule is: ''If the principal effect of . . . photographs is to arouse the passions of the jury and inflame them against the defendant because of the horror of the crime, the evidence must of course be excluded. . . . On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice . . ., the evidence is admissible. . . .'' In the instant case the photograph

had probative value in showing the use of force by the assailant and there was no error in admitting it.

■ Appellant contends further that it was improper to question him as to four prior felony convictions. He contends that only one should have been allowed to be shown. Appellant concedes that the rule is otherwise, but he contends that the statute, Code of Civil Procedure, section 2051, is in the singular and the rule is therefore wrong. There are two answers. Section 17 of the Code of Civil Procedure states that the singular number includes the plural, and therefore the statute can be read that a person may be impeached by showing that he has been convicted of felonies. The second reason is that the rule that each felony can be shown is well established by a long line of decisions beginning with *People* v. *Eldridge,* 147 Cal. 782 [82 P. 442].

■ Appellant also contends that the district attorney was guilty of prejudicial misconduct in arguing as follows to the jury:

"Just one more point, ladies and gentlemen, and then I will quit. As you are twelve jurors and two alternate jurors selected from among the community, you have an obligation to the whole community. You have an obligation to the defendant and to the rest of this community. You are sitting here on their behalf. Now, it is a terrible thing that a crime of this kind can occur on our streets, and when people read about things in newspapers, we know the remarks they make about it, 'What is this country coming to?' and 'Something ought to be done.'

"In this case you have the opportunity to do what should be done with respect to at least one of such crimes, and you have——"

The record shows that counsel for appellant objected to the above remarks as a direct appeal to passion, and that the court thereupon admonished the jury as follows:

"I will admonish counsel he can not refer to any other cases at all. We are not interested in what happened at other times or places at all. What you are concerned with, ladies and gentlemen, is the evidence in this case and the law I will give to you."

We do not believe that the remarks of the district attorney exceeded the bounds of legitimate argument, for as stated in *People* v. *Gingell,* 211 Cal. 532, at page 541 [296 P. 70]: "It has been held in many cases that the range of discussion, illustration and argumentation is very wide and that matters

of common knowledge may be referred to and allusion may be made to the prevalence of crime and the duty of the jury. (*People* v. *Burke*, 18 Cal.App. 72, 102 [122 P. 435], and cases there cited.) . . .''

Furthermore, even if the portion of the district attorney's argument objected to should be considered prejudicial, the prompt admonition given by the trial judge eradicated any prejudicial error for, as stated in *People* v. *Clayberg*, 26 Cal.App. 614, at page 620 [147 P. 994]: ''The prompt and emphatic admonition by the court to the jury to disregard and not to be governed by the objectionable remarks of the district attorney were no doubt obeyed by the jury. At any rate, we must so presume and that whatever damaging effect said remarks might otherwise have had upon the rights of the accused was overcome by the timely instruction of the court to disregard them. [Citing cases.]''

█ Appellant's final and most serious contention is that the court erred in giving the following instruction:

''A charge of rape such as that made against the defendant in this case is one, which, generally speaking, is easily made, and once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution.

''However, the fact that the charge here made is one difficult to disprove should not deter you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty as charged.''

Appellant contends that it was error to give the second paragraph of this instruction. He relies on *People* v. *Lyons*, 47 Cal.2d 311 [303 P.2d 329], and *People* v. *Hurlburt*, 166 Cal.App.2d 334 [333 P.2d 82]. In the Lyons case the judge added the second paragraph to a printed instruction. The addition was in the judge's handwriting, and this was the only instruction which contained additional matter. The instructions were taken into the jury room. The Supreme Court said at page 322:

''Since in no other instruction did the trial judge add anything in his own handwriting, it may well be that if the jury read the instructions they might have been influenced to the belief that notwithstanding the cautionary admonition as to the testimony of the complaining witnesses, the court

was inclined to the belief of the guilt of the accused. To us it appears that in the case at bar there was no reason to add to the cautionary instruction the admonition that notwithstanding the caution with which they should view the testimony of the complainants that 'should not deter you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty.' They had already been fully advised in that regard, and to emphasize it as was done in this case might well have turned the scales to the prejudice of appellant. In other words [it would appear] that the court leaned toward the view that notwithstanding the 'recognized existence of the ease with which convictions of men, even those of unblemished reputation, may be secured in cases of the instant kind' (*People* v. *Adams* [1939], *supra*, p. 168 [14 Cal.2d 154 (93 P.2d 146)]), such was not the case in the instant prosecution. The overemphasis contained in the language appended to the cautionary instruction in the handwriting of the trial judge might well have militated against a fair or dispassionate consideration by the jury of the cautionary elements of the instruction which is the outgrowth of human experience. . . .''

The court also said:

''[Cautionary instructions which concluded with words materially similar to those added here by the trial court, in its own handwriting, have been upheld by a majority of this court in *People* v. *Westek* (1948), 31 Cal.2d 469, 481-482 [190 P.2d 9], and by the District Court of Appeal, second Appellate District, Division Two, in *People* v. *Ernst* (1953), 121 Cal.App.2d 287, 295-296 [263 P.2d 114]; *People* v. *Ahsbahs* (1946), 77 Cal.App.2d 244, 250-251 [175 P.2d 33]; and *People* v. *Arechiga* (1945), 72 Cal.App.2d 238, 240-241 [164 P.2d 503]. The People argue that the decisions last cited preclude a holding that the addition of the handwritten words was prejudicial error. This contention goes too far and misses the point. The fact that the words standing alone do not state an erroneous proposition of law does not mean that the addition of them in the circumstances of this case may not be considered in determining whether the defendant has been accorded a fair trial. The addition of such words to the cautionary instruction was wholly unnecessary. Just as the accurate statement of a proposition of law which is entirely inapplicable to the facts of a case may mislead a jury to the prejudice of a party (*People* v. *Silver* (1940), 16 Cal.2d 714, 722 [108 P.2d 4]; *People* v. *Roe* (1922), 189 Cal. 548,

558 [209 P. 560], so may overemphasis on a particular point (*People* v. *Hatchett* (1944), 63 Cal.App.2d 144, 158 [146 P.2d 469]). In the circumstances of this case, where the words were wholly unnecessary to a fair and clear statement of the pertinent proposition of law and were supererogated in the handwriting of the judge on the already adequate printed instruction which was taken into the jury room, their overemphasis upon conviction is manifest.]''

Appellant also quotes from *People* v. *Hurlburt*, 166 Cal. App.2d 334 [333 P.2d 82], which was a case involving a charge of lewd conduct against a 9-year-old girl. The court said at page 338:

''Of course, it has been the rule in this state for many years that it is reversible error to fail to instruct that because such charges are easy to make and hard to disprove the testimony of the prosecutrix must be carefully scrutinized. (*People* v. *Putnam*, 20 Cal.2d 885 [129 P.2d 367]; *People* v. *Garrett*, 27 Cal.App.2d 249 [81 P.2d 241].) In fact, even qualifying the normal instruction by stating that, nevertheless if the jury believes that the defendant is guilty beyond a reasonable doubt a guilty verdict should be returned, is reversible error. (*People* v. *Lyons*, 47 Cal.2d 311 [303 P.2d 329].)''

We do not believe that the decision in *People* v. *Lyons, supra*, properly analyzed and considered, either justifies or requires a reversal of the judgment in the instant case, for as stated in *Porter* v. *Bakersfield & Kern Elec. Ry. Co.*, 36 Cal.2d 582, 590 [225 P.2d 223]: ''It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court.'' In the Lyons case the prosecuting attorney had committed the very flagrant error in cross-examining the wife of the defendant (who had not yet testified) of alluding to a prior conviction of defendant under another name. The Supreme Court held that the case was closely balanced and guilt was not so clearly established as to render it improbable that the harmful effect of the misconduct of the prosecuting attorney may have turned the scales against the accused and that therefore such misconduct was ground for reversal.

The court then proceeded to the discussion of the instruction hereinbefore set forth and concluded that since the addition was in the handwriting of the judge, and was the only part of the instruction that was in the handwriting of the judge, and was taken into the jury room, ''it may well be that if the

jury read the instructions they might have been influenced to the belief that notwithstanding the cautionary admonition as to the testimony of the complaining witnesses, the court was inclined to the belief of the guilt of the accused.'' As hereinbefore quoted, the court felt that ''The overemphasis contained in the language appended to the cautionary instruction in the handwriting of the trial judge might well have militated against a fair or dispassionate consideration by the jury of the cautionary elements of the instruction which is the outgrowth of human experience. . . .''

The instruction complained of is in the identical language of CALJIC 510 and has been stated in many decisions to be a correct statement of the law. We believe that *People* v. *Lyons, supra,* must be considered to be a case wherein the giving of the special instruction, in addition to the cautionary instruction, was held to be erroneous because of the unique circumstances of the case. In that case this special instruction was written in the judge's longhand immediately following the printed cautionary instruction. The written instructions were taken into the jury room. Thus, this special instruction was overemphasized. It was this overemphasis that the court held to be erroneous and prejudicial.

We believe that the Lyons case is not determinative of the instant case because in the instant case the special instruction was not overemphasized. This special instruction was not attached to the printed instruction in longhand of the judge. The instructions were not seen by the jury. As the instruction is a proper expression of the law and since there is no overemphasis of it in this case, there was no error in giving it.

While it is true that in *People* v. *Hurlburt, supra,* the court stated that even qualifying a normal instruction by stating that nevertheless if the jury believes that the defendant is guilty beyond a reasonable doubt a guilty verdict should be returned is reversible error, this statement must be considered as mere dicta because this opinion itself states at page 398 that ''The sole point urged on this appeal is that it was error to exclude evidence of the fact that the complaining witness had made prior false accusations that other men had committed acts against her similar to those charged against the defendant.'' There was no discussion in the opinion as to any instructions given or not given in the case.

Furthermore, even if the giving of the criticised portion of the instruction was error, we are convinced after an examination of the entire record that no miscarriage of justice has

resulted. The complaining witness' testimony clearly identified appellant as her assailant. While appellant, on the witness stand, denied that he knew her or had attacked or robbed her, the police officers testified that upon being arrested he admitted having known her for two years and admitted that he had had intercourse with her, but asserted that she had consented to it. The following appears in Officer Stanley's testimony "[H]e says, 'Well, I met her in front of the park on that night.' And we asked him if he had raped her and robbed her, and he stated that she went with him willfully—consented to his advances." And in Officer Stodgill's testimony the following appears: "He stated that on this particular night he met her, he said—this supposed rape, he stated, he said, 'That wasn't no rape.' He said, 'She submitted to me, she consented.' He said, 'That wasn't on the 14th, which was a Sunday morning.' He said, 'That was on Saturday.' He said that it happened, because he specifically remembers the incident, he stated that she consented. He stated he admits he struck her three or four times, the reason he struck her was she wouldn't give him $3.20 with which to get his clothes out of hock. He said they were being kept by the Chinese landlord at 1811½ 3rd Street because he failed to pay his bill, his room rent. He stated that he hit her, he said he had seen her watch on a couple of occasions, he stated he asked her to give it to him and she refused. He stated she had told him she had bought it for $59 and that she owed $37 on it. He denies taking the watch at that time." Appellant's testimony was impeached by evidence of three prior felony convictions.

We are satisfied that the judgment of conviction is amply supported by the record, and having in mind the plain and meaningful language of section 4½ of article VI of our state Constitution, we conclude that the judgment and order should be affirmed.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 5, 1959.