[Crim. No. 7801.   Second Dist., Div. Four.   June 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM
HAROLD HAXBY, JR., Defendant and Appellant.

Leon Mayer for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Herbert Davis, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, P. J.—By information defendant was charged in four counts with violations of section 288 of the Penal Code. Counts I and II alleged violations upon Claudia, a neighborhood girl, and Counts III and IV alleged violations upon Joyce, one of defendant's daughters. A jury trial having been duly waived, defendant was found guilty by the court on Counts I and II and not guilty on Counts III and IV. He appeals from the "judgment of conviction," the order denying a new trial and the order finding him a probable sexual psychopath.

Penal Code section 1237, subdivision 1, permits an appeal from a final "judgment of conviction." The criminal proceedings in the instant case were suspended pursuant to the trial court's order committing defendant to Atascadero State Hospital as a probable sexual psychopath and in accordance with the provisions of the Welfare and Institutions Code, section 5501. Hence no final judgment of conviction was entered and the appeal from such purported judgment (none existing) must be dismissed. (*People* v. *Niendorf,* 197 Cal. App.2d 594, 596 [17 Cal.Rptr. 467 ]; *People* v. *Bales,* 180 Cal.App.2d 16, 18 [4 Cal.Rptr. 205].) Defendant's appeal from the order denying a new trial, however, is proper. (Pen. Code, § 1237, subd. 2.)

The state's principal witness, Claudia, was 10 years old at the time of the trial. She lived across the street from defendant's residence. She frequently played in the Haxby home with the Haxby children of which there are four. Most of her time was spent with Joyce, one of the defendant's daughters.

Claudia testified defendant had committed certain acts upon her which would violate section 288 of the Penal Code. These acts were stated to have been committed on four or five occasions in defendant's bedroom, with Claudia and Joyce

both being present and with defendant committing the same actions with each child. The People introduced no evidence regarding the acts concerning Joyce and defendant was found not guilty of these counts. The charges related to acts occurring in August 1959 and July 1960. Claudia was very indefinite as to when the acts actually occurred and finally stated they were sometime before Halloween of 1960. Claudia's first mention of defendant's conduct was in early 1961 at least three and one-half months from the date of the last occurrence and some 16 or 17 months after the first act charged.

On appeal defendant first contends that he was unduly restricted by the court in the cross-examination of Claudia upon whose uncorroborated testimony defendant was found guilty.

One of the questions to which objection was sustained, of which defendant complains, was as to whether Claudia enjoyed what defendant was doing to her. There was no showing of materiality of this question and no offer of proof by defendant in connection therewith, and under such circumstances there was no error in sustaining the objection to this question.

In another question defense counsel asked Claudia what she had heard from other children about sex, to which objection was sustained. Just prior to this question being asked Claudia had been asked the source of her naming the male sexual organ ''the lone ranger'' and she related a joke she had heard at school in which it was so called and in which the female sexual organ was referred to as ''the canyon.'' It was at this point that defense counsel inquired as to whether she had heard some girls talking about matters involving sex, to which she replied in the affirmative. He then asked her what she had heard, to which question an objection was sustained. Here, again, no offer of proof was made as to the materiality of the question, and under ordinary circumstances the sustaining of the objection would be within the wide discretion allowed the court in deciding such matters. However, a close reading of the entire transcript reveals a very unusual set of circumstances which points up the wisdom of the basic rules of law applicable here.

While the law reposes a wide discretion in the trial judge in dealing with the latitude of cross-examination in these cases (*People* v. *Garcia*, 174 Cal.App.2d 525, 533 [344 P.2d 855]), where the testimony of a young child alone is

sufficient to sustain a conviction the law requires the trial judge to allow a great deal of leeway in cross-examination. (3 Wigmore on Evidence (3d ed.) pp. 459-460; *People* v. *Hurlburt,* 166 Cal.App.2d 334, 338 [333 P.2d 82, 75 A.L.R.2d 500].)

In the instant case the evidence reveals that these charges against defendant were brought to light as a result of a conversation between Claudia and the daughter of a next-door neighbor of defendant. Claudia was spending Halloween night with the neighbor family. The girls were discussing dating and Claudia had told the neighbor girl that she used to date Mr. Haxby, the defendant. These particular neighbors were the ones who apparently instigated an investigation into the conduct of defendant. When defense counsel sought to inquire into the circumstances under which these charges came to light, the court sustained objections to such questions. In the investigation both Claudia and defendant's daughter, Joyce, told the police and also a school official that the acts, described by Claudia at the trial, had taken place when the two children were present together with defendant in his bedroom.

Mrs. Haxby, defendant's wife, testified that she was brought to the district attorney's office and confronted with the story and was importuned to sign the complaint against her husband, being told that he was an ill person and that it would be better for him if she were to sign the complaint. Finally, she stated, she was told if she did not sign it the investigating police sergeant would do so. Mrs. Haxby testified at the trial that she was "overwhelmed" by the facts "represented to her." After signing the complaint she stated that she talked to her daughter, Joyce, and said, ". . . for the first time I became quite firm with her. Before that I was not. And I asked her to please tell me the truth because this was serious. . . . This was the morning before the Preliminary. And she admitted to me that she had had some sexual play with a boy across the street. . . . This was Chuckie . . . she started to cry and she says, 'I didn't think that it would hurt anything if I said that Daddy had done some of these things when the police were questioning me,' she said, 'but I have been with Chuckie in the bedroom,' and she told me which bedroom and approximately when."

When the daughter Joyce took the stand at the preliminary hearing, after giving her name and address she began to cry and apparently answered no further questions. At the trial

Joyce acknowledged that she had told the police sergeant and a school official of the acts with her father as described by Claudia, and when asked her reason for making these statements she claimed that it was because Claudia and the neighbor girl had told her to do so; that they had told her to tell that "to anybody that asked." At the trial Joyce denied that her father had ever committed the acts upon Claudia or herself. When counsel attempted to go into the subject of Joyce's sex play with Chuckie the court sustained the prosecution's objection.

Counsel also attempted to elicit testimony from several of the witnesses concerning a club which the children, directly involved in these incidents, were contemplating forming, but here again objections to going into this field of inquiry were sustained.

Again, the court sustained objections when defense counsel attempted to inquire into an incident allegedly involving the neighbor girl and Joyce which occurred after the preliminary hearing. In his offer of proof, which the court rejected, counsel asserted that the neighbor girl had made a threat to Joyce which threat she said she would make good unless Joyce agreed to testify against her father at the trial. According to the offer of proof this threat involved having one of the neighbor children expose himself to Joyce.

Defendant was repeatedly foreclosed from inquiring into the assertedly hostile relationship between the Haxbys and the nextdoor neighbors. Defendant evidently was trying to show that the prosecution was the result of ill will between the two neighbors. Defendant's offer of proof to show that between the time of the preliminary hearing and the trial this same neighbor had offered George, defendant's 11-year-old son, five dollars to testify against his father was also rejected.

The People assert there was no abuse of the trial court's discretion in rejecting these various lines of collateral testimony. As stated in *People* v. *Norred*, 110 Cal.App.2d 492, 497-498 [243 P.2d 126], where the issue of the hostility between the prosecutrix' father and the defendant was raised, "The question before the jury, after all, was whether these lewd and lascivious acts had been committed, and if so whether defendant committed them. As relevant or material to those issues it will be seen at a glance that none of the foregoing matters could have had any possible materiality or probative value."

While, under ordinary circumstances, it would not be material in a criminal prosecution to show the hostile relationship existing between these neighbors or to inquire into the sex play of these children with one another, or to show their knowledge of these matters, in a case of this sort we should bear in mind the admonitions of the Supreme Court in *People v. Adams*, 14 Cal.2d 154, 167-168 [93 P.2d 146]:

"With respect to this kind of case [prosecution for violation of Pen. Code, § 288], when it is remembered that 'There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free play of malice and private vengeance,' and that 'In such cases the accused is almost defenseless,' it certainly behooves the courts of last resort rigorously to insist upon the observance of those salutary rules regarding the admission of evidence and the trial of actions in general, which for centuries have been in practice to the end that an accused may be assured of a fair trial. As frequently has been said regarding cases of the instant character, 'No charge can be more easily made, and none more difficult to disprove.' . . . It is because of the recognized existence of the ease with which convictions of men, even those of unblemished reputation, may be secured in cases of the instant kind that courts are at pains to insist upon fair trials in all respects being accorded to the accused. Errors committed either by the prosecution or by the court in the course of the trial, which ordinarily might be considered trivial and as of no material consequence from a standpoint of adverse effect upon the rights of a defendant, may become of great importance when committed in a case of the character of that here involved."

The ultimate question presented in this case is whether or not the accused has been accorded a fair trial. Considering the unusual dangers to defendants and the special duties of trial courts in prosecutions of this nature, we are convinced that the question in this instance must be answered in the negative.

While it is quite possible that much, or perhaps all, of the testimony sought to be elicited, and to which objections were sustained by the trial court, would have developed to be immaterial to the determination of the basic issue of guilt or innocence, under the circumstances of this case broad leeway in cross-examination should have been permitted in order to exhaust every reasonable avenue of the ascertainment of truth.

Orders denying motion for new trial and finding defendant a sexual psychopath are reversed. Appeal from purported judgment of conviction dismissed.

Jefferson, J., and Balthis, J., concurred.

A petition for a rehearing was denied July 16, 1962, and respondent's petition for a hearing by the Supreme Court was denied August 15, 1962.