[Crim. No. 5795. In Bank. Nov. 20, 1956.]

THE PEOPLE, Respondent, v. LEONARD LYONS, Appellant.

Matthews & Hill and John J. Hamilton for Appellant.

Edmund G. Brown, Attorney General, William E. James and Marvin Gross, Deputy Attorneys General, for Respondent.

SCHAUER, J.—Defendant was charged by information with two violations of section 288 of the Penal Code and with a prior conviction of robbery in New York in 1931 under the name Leonard Leibowitz. He pleaded not guilty and admitted the prior conviction. A jury found him guilty of the charged offenses. Defendant appeals from the ensuing judgment of conviction and from an order denying his motion for a new trial.

After decision by the District Court of Appeal, Second Appellate District, Division One, which reversed the judgment and order, this court granted a hearing to give consideration to an argument advanced by the People and hereinafter discussed. We have concluded that the opinion prepared for the District Court of Appeal, by Mr. Presiding Justice White, correctly disposes of the cause. Therefore, we adopt the

opinion with appropriate deletions and additions indicated as follows:[1]

[ ] Defendant and the two complaining witnesses [Linda and Cheryl] lived in the same general neighborhood. Linda, 9 years old, testified that on one occasion toward the end of July, 1954, about 1 o'clock in the afternoon, she went to defendant's home to call on his daughter Gail. Opening the door, defendant told Linda that his daughter was in the kitchen; after Linda had entered, defendant locked the doors. Upon finding that Gail was not in the kitchen, Linda was invited by defendant into the den, where she sat down on the couch to watch television. At that time defendant "started to tickle me," "from the top of me and went down." Then "he pushed me down and he made me lay down and he got on top of me," "and he took my shorts and panties down." Linda then testified that defendant then "opened a part of his pants and then he lay on top of me," "and stuck his thing into mine" "and he moved up and down." Linda testified that during this time she made no outcry nor did she say anything to defendant.

Afterwards defendant told Linda that she had better not tell anyone about this. Linda did not tell her parents about the incident for five or six weeks, because "I was afraid he was going to do something to me."

About a week after the incident defendant called Linda on the telephone several days in succession telling her, "I have got some candy for you, come over." Linda refused the invitation.

[ ] [T]he father of Linda corroborated the fact that Linda had informed him of the incident on the Friday after Labor Day of that year.

Cheryl, 11 years old, testified to substantially the same personal experiences as did Linda; that she went to defendant's home to visit Gail; that defendant told her that Gail was in the kitchen; that after Cheryl entered, defendant locked all the doors; that Gail was not in the house and that defendant invited Cheryl to enter the den and sit on the couch;

[1]Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the District Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted.

that he tickled her from the head down, then asked her to lie down and pull her panties down; and that defendant then fondled her private parts; also, that he opened his trousers and Cheryl "saw his thing." Then defendant lay on top of Cheryl "and he put his thing between my legs," "he moved around," and "he laid on me for a long time and then he got off, and said, 'I will be right back' "; and that she then unlocked a door and left. Due to her fear of defendant, Cheryl postponed telling her parents until the same day on which Linda told hers. This complaint was corroborated by Cheryl's mother. [ ]

Dr. Light, a qualified pediatrician, testified that he examined Linda on October 4, 1954, and found that her hymen was ruptured; his notations from a previous examination of April 29, 1953, disclosed that there was no ruptured hymen at that time.

In his own behalf defendant took the witness stand and denied putting his private parts next to those of either of the complaining witnesses; and he further denied that Cheryl ever came to his home during June, when his daughter was not at home. Lillian Lyons, the wife of defendant, testified that her husband was never home alone on any Saturday from June until September of 1954 because it was their habit to go shopping together every Saturday.

Esther Appleton testified that she is the principal of the school attended by Linda; that she had talked with other teachers and pupils at the school and had written reports from teachers concerning Linda. Based on the foregoing the witness testified that Linda's reputation for truth and veracity was bad. On cross-examination of Mrs. Appleton she was questioned as follows:

"Q. (By Deputy District Attorney) Let me ask it this way: In your discussions with Mrs. Kirkham, did she tell you that this little girl was a liar? A. Yes.

"Q. More than one occasion? A. Yes, sir.

"Q. All right. How about Mr. Prenn? A. The name is Prenn.

"Q. Mr. Prenn. Mr. or Mrs.? A. Mr. Prenn.

"Q. And did he tell you that this little girl tells stories? A. Yes, sir; because we never use the word lie."

Six witnesses testified that defendant's general reputation for chastity was "good," "very good," and "above reproach." Other witnesses were present and ready to testify but the

court restricted the number to six on the ground that there being no rebuttal testimony on the issue of reputation, further evidence "becomes cumulative definitely."

In view of subsequent discussion it might here be noted that during the cross-examination of the complaining witness Cheryl, the following transpired:

"Q. And every time he put it between your legs; is that right? A. Yes, sir.

"Q. Well, he put it inside of you too, didn't he? A. No.

"Q. Never? A. No. . . .

"Q. Cheryl, when you were in the other court (Preliminary Examination), didn't you say, 'He put his in mine'? 'His private parts in mine and he left it there for about three minutes'? A. But mother had an examination at the doctor's office and the doctor said it didn't happen.

"Q. The doctor said it didn't happen? A. Yes.

"Q. That is all."

As his first ground for a reversal appellant urges that the district attorney was guilty of prejudicial misconduct in alluding to appellant's prior conviction during the cross-examination of the latter's wife. She had testified that she never left home on Saturdays (the day of the week on which both offenses allegedly occurred) without her husband because that was the day on which they did their shopping. Then the following ensued:

"Q. (By Deputy District Attorney) And there is some reason, then, for your not leaving Mr. Leibowitz at your home on Saturday by himself? A. My husband's name is not Mr. Leibowitz, sir.

"Q. Oh, it is not Leibowitz? A. Not now.

"Q. You knew him back in 1931, didn't you? A. Yes.

"Q. You know of his conviction back in New York under that name? A. Yes, sir.

"Q. His real name now is Lyons? A. His real name is Lyons now.

"Q. Was it something else before that? A. Pardon?

"Q. Was it something else before that? A. Leibowitz.

"Q. Before that it was Leibowitz? A. Yes.

"Q. I thought you just told us his name is not Leibowitz. A. Now, I said.

"Q. Oh, I see. However, in 1931 it was? A. Yes, sir; it was."

With commendable fairness, the attorney general does not contend that the foregoing cross-examination was proper but

asserts there was no actual prejudice or resultant miscarriage of justice (Cal. Const., art. VI, § 4½). Respondent urges that while, at the time of the foregoing interrogations, appellant had not yet taken the witness stand, he ultimately became a witness in his own behalf, at which time the prior conviction was properly alluded to for the purpose of impeachment (Code Civ. Proc., § 2051).

█ It would be an impeachment of the legal learning of counsel for the People to intimate that he did not know the aforesaid questions to be improper, wholly unjustifiable and peculiarly calculated to prejudice the appellant before the jury. One has but to read the foregoing questions to observe in them the subtle insinuations that appellant had used names other than Leibowitz or his present name of Lyons. The prosecuting attorney may well be assumed to be a man of fair standing before the jury, and the members thereof may well have thought that he could prove the innuendo contained in the improper questions.

In the instant case, the evidence is in sharp conflict. All the material facts testified to by the witnesses for the prosecution were denied and controverted. There was creditable evidence to support appellant's alibi. No complaint was made by either of the victims for several weeks after the occurrence of the acts charged. █ Courts look with disfavor upon a complaint made long after the event in question (*People* v. *Musumeci* [1955], 133 Cal.App.2d 354, 364 [284 P.2d 168]). The general reputation of one of the complainants for truth and veracity was characterized as bad by her teachers at school, while the other complainant was impeached by showing that she changed her testimony given at the preliminary examination because thereafter her ''mother had an examination at the doctor's and the doctor said it didn't happen.''

Several witnesses testified that appellant's general reputation in the community where he lived was good. When consideration is given to the evidence in this case in its entirety it seems manifest that if the jury attached the slightest weight to the insinuating questions of the prosecution, and the innuendo herein contained, it would be sufficient to turn the scales.

It is true, as urged by respondent, that no objection to the foregoing questions was made at the trial, and the court was not requested to admonish the jury to disregard them.

And it is contended that the issue cannot be raised for the first time on appeal. ■ However, as was said in *People* v. *Ford* [1948], 89 Cal.App.2d 467, 470-471 [200 P.2d 867]: "As a general rule, if the harmful effect of improper statements could probably have been removed by an admonition to the jury, failure to request such admonition is regarded as a waiver of the right to rely upon the statements as misconduct. (*People* v. *Simon* [1927], 80 Cal.App. 675, 678-679 [252 P. 758], and many cases cited.) ■ Upon the other hand, where the misconduct is of such a character that it cannot be purged of its harmful effect by an admonition, it will be considered as a possible ground for reversal in cases where the jury has been admonished (citing cases), as well as in cases where no objection was made or admonition requested on behalf of the accused (citing cases). ■ *In either situation, where the case is closely balanced and guilt has not been so clearly established as to render it improbable that the harmful effect of the misconduct may have turned the scales against the accused, such misconduct has consistently been deemed ground for reversal.* (Citing cases.)" (Emphasis added.)

■ What was said by the Chief Justice of the United States in the case of *Viereck* v. *United States* [1943], 318 U.S. 236, 248 [63 S.Ct. 561, 87 L.Ed. 734] (quoting from *Berger* v. *United States* [1935], 295 U.S. 78, 88 [55 S.Ct. 629, 79 L.Ed. 1314, 1321]), reflects our views as to the duties and obligations of a prosecuting officer. We quote: "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

In the recent case of *People* v. *Wilkes* [1955], 44 Cal.2d 679, 687 [284 P.2d 481], our Supreme Court in dealing with the propensity of some prosecutors to transcend the bounds

of legitimate methods to secure a conviction, had this to say: "It was error for the prosecution to comment on the failure of Mrs. Wilkes to testify. (Citing cases.) Such error has repeatedly been denounced but held not to have been prejudicial in the circumstances of the particular cases in which it has occurred. Because of such repeated holdings, it appears from the brief of the People, prosecuting officials have come to the belief that erroneous conduct in this regard is, as a matter of law, not cause for reversal. The conduct here, as in previous cases where it has been rebuked but held not prejudicial, was manifestly deliberate. Regrettably, the circumstances make it apparent that we must recognize and deal with the fact that such conduct will not be discontinued as long as it is merely rebuked. (See *People* v. *Ford* (1948), 89 Cal.App.2d 467, 472 [200 P.2d 867] ["we have extended our remarks respecting misconduct in the hope that they will be taken as a serious effort to inspire a greater degree of responsibility, duty and caution on the part of those prosecutors who are either careless in the observance of the rights of the accused or wholly indifferent to the consequences of their misconduct. It is regrettable that so much is left for reviewing courts in the way of discouraging misconduct. Fewer judgments would have to be reversed if the trial courts were more firm in controlling the comparatively few prosecutors who need restraint"].[2])

■ It is axiomatic that when an accused is denied that fair and impartial trial guaranteed by law, such procedure amounts to a denial of due process of law (*Powell* v. *Alabama* [1932], 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]). ■ Criminal cases should not be conducted with an eye to the saving grace of section 4½, article VI of our state Constitution. Excepting motions for a new trial, the constitutional section is of no concern to the trial courts, and so far as its application goes, it is of interest only to the courts of review (*People* v. *Black* [1925], 73 Cal.App. 13, 43 [238 P. 374]).

Appellant next assails the testimony of the prosecuting witnesses as inherently improbable. This contention cannot be sustained. ■ The rule is thus stated in *People* v. *Huston* [1943], 21 Cal.2d 690, 693 [134 P.2d 758]:

"Although an appellate court will not uphold a judgment

---

[2]These brackets appear in the authority quoted (*People* v. *Wilkes* [1955], *supra*, p. 687 of 44 Cal.2d).

or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. (*Kidroski* v. *Anderson* [1940], 39 Cal.App.2d 602, 605 [103 P.2d 1000].) To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing cases.) Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. (*Hicks* v. *Ocean Shore Railroad, Inc.* [1941], 18 Cal.2d 773, 781 [117 P.2d 850].)

It is next urged that the trial court was guilty of prejudicial error in modifying the cautionary instruction given the jury. In that regard the record shows that the trial judge read to the jury the following instruction, which was in printed form:

"It is not essential to a conviction in this case that the testimony of the prosecuting witness be corroborated by other evidence, provided that from all the evidence you are convinced beyond a reasonable doubt and to a moral certainty of the defendant's guilt. However, a charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and, once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution.

"[In giving this instruction I do not mean to imply an opinion of my own as to the credibility of any witness.]"[3]

To the foregoing the judge added in his own handwriting the following: "and the fact that the charge here made is one difficult to disprove should not deter you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty."

In an affidavit by the bailiff of the trial court, received by augmentation of the record, he avers that he recalls the instant case, "that in all cases of jury trials he always takes

---

[3]These brackets are included in the record as it comes to us.

the jury instructions in to the jury room . . . that he recalls no case in which a jury trial was had that he did not take the jury instructions in to the jury room.''

Appellant argues that ''It is within reason to anticipate that most, if not all, jurors entertain a belief that the judge or the Court is a person of great importance and hence such jurors undoubtedly would pay great attention to any expression either oral or in writing of any judge and upon viewing the said instruction in connection with the personal writing of the trial judge must have realized that the overemphasis caused solely by the said additional writing by the judge re-emphasized the judge's belief that he leaned definitely toward guilt rather than a neutral position in the matter and in this regard it must be noted that no saving phraseology is included in the instruction or no effort to neutralize the possible danger of the jury viewing such handwritten handwriting by the judge.''

The reason for giving cautionary instructions in cases of the kind now before us was thus stated by the Supreme Court in *People* v. *Adams* [1939], 14 Cal.2d 154, 167 [93 P.2d 146], wherein it is stated: ''As frequently has been said regarding cases of the instant character, 'No charge can be more easily made, and none more difficult to disprove.' As a matter of practical observation to many judges who have presided over trials of this nature, it is plainly recognized that, notwithstanding the salutary rule that an accused is presumed to be innocent until his guilt has been established beyond a reasonable doubt, nevertheless, to the mind of the average citizen or juror, the mere fact that a person has been accused of the commission of such an offense seems to constitute sufficient evidence to warrant a verdict of 'guilty'; and that—instead of its being necessary for the prosecution to prove his guilt beyond a reasonable doubt— in order to secure an acquittal of the charge, it becomes incumbent upon the accused to completely establish his innocence, and to accomplish that result not only by a preponderance of the evidence but beyond a reasonable doubt. In such a situation, the only defense available, ordinarily, to the accused is his own denial of any asserted misconduct, together with evidence of a former good reputation; otherwise, he is utterly defenseless and at the mercy of a jury which probably is very much prejudiced.''

In the case just cited it is further stated, at page 168:

"It is because of the recognized existence of the ease with which convictions of men, even those of unblemished reputation, may be secured in cases of the instant kind that courts are at pains to insist upon fair trials in all respects being accorded to the accused. Errors committed either by the prosecution or by the court in the course of the trial, which ordinarily might be considered trivial and as of no material consequence from a standpoint of adverse effect upon the rights of a defendant, may become of great importance when committed in a case of the character of that here involved."

By other instructions the jury had been fully admonished that "if, after weighing all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty of (a) crime charged against him in the information, your duty will be to find him guilty . . ." The jury was also advised that "You are to be governed solely by the evidence introduced in this trial and the law as stated to you by me. The law forbids you to be governed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling. Both the People and the defendant have a right to demand, and they do demand and expect, that you will conscientiously and dispassionately consider and weigh the evidence and apply the law of the case, and that you will reach a just verdict, regardless of what the consequences of such verdict may be."

 Since in no other instruction did the trial judge add anything in his own handwriting, it may well be that if the jury read the instructions they might have been influenced to the belief that notwithstanding the cautionary admonition as to the testimony of the complaining witnesses, the court was inclined to the belief of the guilt of the accused. To us it appears that in the case at bar there was no reason to add to the cautionary instruction the admonition that notwithstanding the caution with which they should view the testimony of the complainants that "should not deter you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty." They had already been fully advised in that regard, and to emphasize it as was done in this case might well have turned the scales to the prejudice of appellant. In other words, [it would appear] that the court leaned toward the view that notwithstanding the "recognized existence of the ease with which convictions of men, even those of unblemished

reputation, may be secured in cases of the instant kind" (*People* v. *Adams* [1939], *supra,* p. 168), such was not the case in the instant prosecution. The overemphasis contained in the language appended to the cautionary instruction in the handwriting of the trial judge might well have militated against a fair or dispassionate consideration by the jury of the cautionary elements of the instruction which is the outgrowth of human experience. The portion of the instruction added in the handwriting of the trial judge would seem to be an admonition to exercise caution in the application of the cautionary instruction. To us this seems contrary to the philosophy and reasons which gave rise to the necessity for giving the cautionary instruction in cases such as the one now engaging our attention. [ ]

[Cautionary instructions which concluded with words materially similar to those added here by the trial court, in its own handwriting, have been upheld by a majority of this court in *People* v. *Westek* (1948), 31 Cal.2d 469, 481-482 [190 P.2d 9], and by the District Court of Appeal, second Appellate District, Division Two, in *People* v. *Ernst* (1953), 121 Cal.App.2d 287, 295-296 [263 P.2d 114]; *People* v. *Ahsbahs* (1946), 77 Cal.App.2d 244, 250-251 [175 P.2d 33]; and *People* v. *Arechiga* (1945), 72 Cal.App.2d 238, 240-241 [164 P.2d 503]. The People argue that the decisions last cited preclude a holding that the addition of the handwritten words was prejudicial error. This contention goes too far and misses the point. The fact that the words standing alone do not state an erroneous proposition of law does not mean that the addition of them in the circumstances of this case may not be considered in determining whether the defendant has been accorded a fair trial. The addition of such words to the cautionary instruction was wholly unnecessary. Just as the accurate statement of a proposition of law which is entirely inapplicable to the facts of a case may mislead a jury to the prejudice of a party (*People* v. *Silver* (1940), 16 Cal.2d 714, 722 [108 P.2d 4]; *People* v. *Roe* (1922), 189 Cal. 548, 558 [209 P. 560]), so may overemphasis on a particular point (*People* v. *Hatchett* (1944), 63 Cal.App.2d 144, 158 [146 P.2d 469]). In the circumstances of this case, where the words were wholly unnecessary to a fair and clear statement of the pertinent proposition of law and were supererogated in the handwriting of the judge on the already adequate printed instruction which was taken into the jury room, their overemphasis upon conviction is manifest.]

[ ] The ultimate question presented to us in the case at bar is, *Has the accused been accorded a fair trial?* In reviewing, as we have herein, the overall picture framed by the evidentiary features of this case and the errors to which we have referred, we are persuaded that the question must be answered in the negative. [ ]

[In the circumstances the conviction cannot be supported by section 4½ of article VI of the state Constitution, for the denial of a fair trial is a miscarriage of justice. (*People v. Sarrazzawski* (1945), 27 Cal.2d 7, 11 [161 P.2d 934]; *People v. Hooper* (1949), 92 Cal.App.2d 524, 531 [207 P.2d 117]; *People v. Mason* (1946), 72 Cal.App.2d 699, 716 [165 P.2d 481].)]

For the reasons above stated the judgment and order appealed from are reversed.

Carter, J., Traynor, J., and McComb, J., concurred.

SHENK, J.—I dissent.

That the evidence is sufficient to support the verdict is beyond question. The determination of the credibility of the witnesses, that is, the truth or falsity of their testimony, is of course within the exclusive province of the trier of fact and the jury should be so instructed. (Pen. Code, § 1127.) It was so instructed in this case. It is properly held by the majority that the testimony of the witnesses for the prosecution was not inherently improbable.

Misconduct on the part of the prosecuting attorney is held to be one of the reasons requiring a reversal. It appears that in cross-examining the defendant's wife remarks were made by the prosecuting attorney which intimated that the defendant had used names in the past other than Lyons and Leibowitz. This line of questioning was apparently not deemed objectionable at the trial for no objection to it was there made. It is first urged on appeal. If an objection had been interposed at the trial it is reasonable to assume that any possible ill effect of those remarks could have been obviated by a request to the court to instruct the jury to disregard them. It is well established that if such an objection is not raised in the trial court it cannot be urged for the first time on appeal. (*People v. Hampton* (October 1956), *ante,* pp. 239, 240-241 [302 P.2d 300]; *People v. Byrd,* 42 Cal.2d 200, 208 [266 P.2d 505]; *People v. Sampsell,* 34 Cal.2d 757, 764 [214 P.2d 813]; *People v. Codina,* 30 Cal.2d 356,

362 [181 P.2d 881]; *People* v. *Tolson,* 109 Cal.App.2d 579, 582 [241 P.2d 32].)

Prejudicial error is held to have resulted from the giving of an instruction cautioning the jury with regard to the testimony of the witnesses for the prosecution. In addition to the cautionary instruction taken from California Jury Instructions Criminal No. 527 (CALJIC pp. 436-437) there was added in the handwriting of the trial judge the language which appears in the 1953 Pocket Part to CALJIC at page 153. This language was so added to the instruction to make it conform to the completed and approved CALJIC form. The completed instruction, with the portion objected to on the ground that it is in the handwriting of the trial judge being italicized, reads as follows:

"It is not essential to a conviction in this case that the testimony of the prosecuting witness be corroborated by other evidence, provided that from all the evidence you are convinced beyond a reasonable doubt and to a moral certainty of the defendant's guilt. However, a charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and, once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution.

"In giving this instruction I do not mean to imply an opinion of my own as to the credibility of any witness *and the fact that the charge here made is one difficult to disprove should not deter you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty.*"

An instruction in substantially the same language as the above with the italicized portion added to the original instruction was approved in *People* v. *Westek,* 31 Cal.2d 469, 481-482 [190 P.2d 9]; *People* v. *Ernst,* 121 Cal.App.2d 287, 295-296 [263 P.2d 114]; *People* v. *Ahsbahs,* 77 Cal.App.2d 244, 250-251 [175 P.2d 33]; and *People* v. *Arechiga,* 72 Cal. App.2d 238, 240-241 [164 P.2d 503]. As stated in the Westek case, language such as that added to the instruction does not "weaken, modify or detract from that portion of the instruction in which [the jurors] were told to examine with caution the testimony of the prosecuting witness. . . . By the language complained of the court did not indicate any opinion

of its own as to the guilt or innocence of appellant, but in fact it emphasized the duty of the jury to be convinced beyond a reasonable doubt before returning a verdict of guilty."

If the addition had been made in typewriting it is assumed that no valid objection to it could have been made at the trial or on appeal. It then would have been in the approved form under the Westek case. Now, because the modification was made in the handwriting of the trial judge, the judgment is reversed for the stated reason that it carried to the jury the implication that the judge believed the defendant guilty.

It is the duty of the trial judge to cause the instructions to conform to the law as applied to the facts. (Pen. Code, §§ 1127, 1176.) To accomplish this it is common practice for the judge in his own handwriting to modify a proposed instruction by correction, amendment, addition, or deletion. Completed instructions must be prepared in advance of or at the time of charging the jury. Requested instructions are required to be submitted to the judge before the first witness is sworn. Additional instructions may be requested immediately before argument to cover questions of law developed by the evidence. Every proposed instruction must be endorsed in the handwriting of the judge showing his action thereon. If a modification is made by addition or deletion it is frequently done by the judge in his own handwriting. He then endorses on the instruction "Given as modified." The jury is permitted to take the instruction to the jury room with the signature of the trial judge endorsed thereon. (Pen. Code, § 1137.)

What would the majority of the court have the trial judge do when he is convinced that a proposed instruction is good in part but needs modification? If it is partly good and partly erroneous or incomplete, is the trial judge bound to refuse it in its entirety, as he has the right to do? From the time proposed instructions are considered, which may be not until the first witness is sworn, to the close of argument, the trial judge is engaged at least in part in the delicate task of determining the law applicable to the facts of the case and approving or modifying instructions accordingly. If he is prevented from modifying a proposed instruction in his own handwriting, must he suspend proceedings, call in a stenographer, and have the modification done in typewriting? This would seem to be the requirement from now on. The test on appeal should be, is the instruction as modified free from error? Here it is not erroneous. To my mind the restric-

tion now placed on trial judges in the preparation and submission of instructions is unnecessary and unduly burdensome in the administration of justice in both criminal and civil courts. In my opinion no substantial reason is given for a reversal on any ground. The defendant had a fair trial and the judgment should be affirmed.

Gibson, C. J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied December 19, 1956. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.