[Crim. No. 7501. Second Dist., Div. One. Dec. 22, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES EDWARD LEASE, Defendant and Appellant.

Frank Duncan and Elinor Chandler Katz for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused, in two counts, of violating section 288 of the Penal Code in that he committed lewd and lascivious acts upon a girl under the age of 14 years. In a jury trial he was convicted on both counts. Probation was granted. He appeals from the judgment (order granting probation) and from the order denying his motion for a new trial.

Appellant contends that the evidence was not sufficient to support the verdict; and that the court erred in not allowing him to impeach a witness.

 Patricia, an 11-year-old girl, called as a witness by the prosecution, testified in substance as follows: In the evening of February 5, 1960, she and her father and mother visited at the home of defendant where the defendant, his wife and daughter were present. Patricia's mother and father returned to their home that evening, but Patricia stayed all night at defendant's home. The next morning the defendant's wife left the house to go to a place where she worked—thereafter those who remained at the house were Patricia, the defendant, and his daughter Sue (3 years of age). Defendant prepared breakfast for the girls. After breakfast, the defendant called Patricia into the bedroom. When she went there the defendant was lying across the bed, looking at pictures in a black notebook. Defendant showed the pictures to Patricia—the pictures were of ladies without any, or with very little, clothes on. Then, while lying on his back, he pulled Patricia over on top of him, put his hands between her legs and on her private parts. He started to help her take off her clothes from the waist down. He took off his clothes from the waist down. He put his private part between her legs.

She testified further regarding details of acts then committed by him, which acts if true would constitute a violation of said section 288. It is not necessary to state those details.

She testified further that about a week before Christmas in 1959, when she and defendant were in the garage at his home he showed her a deck of cards with pictures thereon of persons who were undressed or who had few clothes on. After showing the cards he put them back in the pocket of a jacket which was hanging on the wall of the garage. Later that day when defendant went to the garage to get a drill to fix a Christmas tree (which was in the house) Patricia went to the garage with him. While they were in the garage he stooped over and put his hand under her skirt and on her private parts.

On February 15, 1960, when Officers Lane and Hollis arrested defendant they advised him as to the contents of the report and the reason for his arrest. When they asked him if he would take them to his home and get the photographs, he replied in the affirmative. He took them to his home and produced the black notebook (Exhibit 1) from the closet in the front bedroom, and produced the deck of cards (Exhibit 2) from under the mattress of the bed. Defendant said that

the cards were normally kept in a hunting jacket in the garage. At the trial, Patricia identified the notebook (Exhibit 1) and one of the pictures therein as having the appearance of the notebook and one of the pictures that defendant showed her. She testified that the picture on one of the cards from Exhibit 2 was the kind of pictures she saw on the cards.

Defendant testified that he had not molested Patricia at any time and that he had never touched her; that she did not follow him when he went to the garage to get the drill.

Defendant's wife testified that after defendant brought the Christmas tree into the house, he went out to get a saw, but Patricia did not follow him. Patricia did not go out of the house after the tree was brought in.

Mrs. Muscarella, called as a witness by defendant, testified that she is the owner of the place where defendant resided; that she resided in a house at the rear of defendant's home; that on the day defendant brought the Christmas tree home, he came to her house about 3:30 p. m. to get a saw and a drill, and no one was with him; after getting the saw and drill, she saw him return to and enter his house; on February 6, she and her husband went to defendant's house about 10 a m., and at that time defendant was cooking breakfast; after breakfast he went out and painted the patio; and he was in their presence until about 12:30 p. m.

Eleven persons, called as witnesses by defendant, testified that defendant's reputation in the community for honesty and morality was good.

Four persons, called as witnesses by defendant, testified that Patricia's general reputation in the community for honesty was not good.

Section 288 of the Penal Code provides: "Any person who shall wilfully and lewdly commit any lewd or lascivious act . . . upon . . . the body . . . of a child under the age of fourteen years, with the intent of arousing . . . or gratifying the lust or . . . sexual desires of such person or of such child, shall be guilty of a felony."

Appellant, in presenting his contention that the evidence was not sufficient to support the verdict, argues that the testimony of Patricia was inherently improbable.

In *People* v. *Lyons*, 47 Cal.2d 311 [303 P.2d 329], the defendant, who was charged with violating section 288 of the Penal Code, contended that the testimony of the prosecuting witness was inherently improbable. The court therein said (pp. 319-320) that the contention could not be sustained, and

" 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " In the present case the testimony of Patricia was not inherently improbable. The conflicts in the testimony of the witnesses presented, of course, a question of credibility which was for the determination of the jury. The evidence was sufficient to support the verdict.

Appellant also contends that the court erred in not allowing him to impeach a witness whom he had called in his own behalf. The witness was Patricia's mother who had testified previously when she was called as a witness by the prosecution. When the mother was a witness, called by appellant, counsel for appellant asked her if she was acquainted with the general reputation of her daughter in the community for honesty. She answered in the affirmative, and then counsel for appellant asked whether her reputation was good or bad. She answered, "Good." Counsel for appellant asked her if she knew of Patricia's reputation in the community for morality. She answered in the affirmative, and then counsel for appellant asked her if it was good or bad. She answered, "Good." Thereafter said counsel asked the witness several questions relative to having sought the advice of the family physician concerning Patricia. The witness replied that she had taken Patricia to the physician for physical examinations, and for his advice with reference to a summer camp episode. Then said counsel asked the witness if Patricia on any occasion had told her anything that she (witness) considered to be untrue. She replied in the affirmative. The deputy district attorney said that "is asking for impeachment for a specific response." The judge said that it is impeachment of the defendant's own witness, and that he would sustain the objection. Thereupon, counsel for appellant said that all he could do was to claim surprise as to the answer which he received. Then, in a discussion by the attorneys and the judge at the bench, the judge

asked counsel for appellant if he had discussed with the witness the child's reputation. Said counsel replied in the negative. The judge said that it appeared difficult for counsel to claim surprise. Said counsel then stated that he had ''her sworn testimony in reference to the fact,'' and he indicated that he would locate it in the preliminary examination transcript. After the judge looked at the transcript, he said: ''This is his own witness. I think he took a calculated risk in calling her as his own witness and asking her with regard to the reputation of her daughter, even though she did testify at the preliminary hearing that the child had been lying to her on occasion. I will permit him to ask that question but I am not going to go into specific instances because I don't think it is material.'' The judge said that he would allow counsel to ask whether the child has ever lied to her, but would not allow counsel to go into specifics of the situation, if she lied. Counsel for appellant asked the witness if on any occasion Patricia had lied to her. She replied, ''Yes.'' Thereupon, said counsel stated that he had no further questions. The court did not err in its ruling with reference to the questions which were asked the witness.

The judgment (order granting probation) and the order denying the motion for a new trial are affirmed.

Fourt, J., and Lillie, J., concurred.