[Crim. No. 15092.   Second Dist., Div. One.   Dec. 3, 1968.]

THE PEOPLE Plaintiff and Respondent, v. JANET IRENE KING, Defendant and Appellant.

Hugh R. Manes for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with battery (§ 242, Pen. Code) on Officers Petrasich (count I) and Yturralde

(count II) while engaged in the performance of their official duties. The court found her guilty, on each count, of assault (§ 240, Pen. Code), a misdemeanor and a lesser but necessarily included offense. She appeals from the judgment and order revoking probation.

Officers Petrasich and Yturralde were assigned to crowd control at Century City on June 23, 1967, on the occasion of the visit of the President of the United States; they were in uniform and Sergeant Yturralde requested Petrasich and another officer to follow him into the crowd of several thousand demonstrators on Motor Avenue to ask a man in a truck northbound in the middle of foot traffic to remove it from the line of march. Petrasich was told to clear a path for the pickup. Seated inside the cab of the truck were the driver and a girl; outside and in back, standing in the bed of the truck was defendant. Just as the officers cleared a path to the east side of Motor so the truck could exit from the line of march, a demonstrator ran up and leaned over the hood of the truck which was not then moving; Petrasich removed him and walked him toward the west out of the path of the truck; as he did so the driver started the truck in motion. Petrasich looked at him and saw him turn the wheel westbound into the crowd instead of east to the pathway they had cleared for him. The truck knocked Petrasich into the crowd which shoved him back into the path of the truck; it came to rest with one of its wheels on top of his left foot. Officer Petrasich hollered in a loud voice for the driver to move the truck off of his foot; the driver looked at him and shook his head, "No." Petrasich then hit the windshield with the flat part of his baton and again shouted to the driver that the wheel was on his foot asking him to move the truck; a second time the driver looked at him and shook his head "No." The officer struck the windshield with the butt end of his baton making a hole in the windshield and a third time told the driver to move the truck off of his foot; the driver shook his head "No." Officer Petrasich hit the windshield two more times making two more holes in the windshield, at which time he yelled to Officer Yturralde that the truck was on his foot; Yturralde looked down and saw the wheel on Petrasich's foot, approached the driver's side of the cab, knocked on the window which was rolled up and shouted to the driver to reverse the truck because it was on the officer's foot. Defendant, who was standing in the back of the truck, struck Yturralde on the helmet and shoulder with a broken sharp pointed stick about

two feet long and one or two inches wide, told him, "Get away," and poked him with the stick; he raised his hand and pushed the stick aside. During the time Petrasich was pinned under the truck, others in the crowd struck him several times on the head, back, shoulders and arms and rammed him in the side with a large pole. The driver moved the truck releasing the officer's foot; the wheel had been on it "for one or two minutes." Petrasich then ordered the driver out of the truck and attempted to open the door but it was locked and the windows were secured from the inside. Meanwhile defendant was hitting the officers who were standing next to the truck and struck Petrasich[1] and at least two other officers with "a long wooden [pointed] stick" about three feet long. Petrasich then hit defendant once with a snapping wrist movement of his baton, and Officer Munoz removed her from the truck, arrested her and transported her to jail facilities set up at Century Plaza; the driver was also arrested. Photographs taken at the scene (Peo. Exhs. 1, 2, 3, 4), as well as CBS and NBC news films (Defense Exhs. A, B), were received in evidence. Neither Officer Petrasich nor Yturralde recalled seeing a dummy or effigy in the truck.

Officer Munoz, called as a defense witness at the preliminary hearing, testified that when he first saw the truck it was headed in a northwesterly direction into the line of march; he saw defendant strike four or five police officers who were stationed around the truck one of whom was Officer Petrasich; when he reached the truck he lifted up defendant who was lying in the bed of the truck and carried, not dragged, her from the scene, handcuffed her and admonished her concerning her constitutional rights.

Jack Corey, a defense witness, testified at the trial that he is a student and was in the demonstration "right next to the truck"; he tried to dissuade the driver from driving into the street; when Petrasich began hitting the truck another officer "possibly" tried to restrain him; he saw defendant throw an effigy which struck an officer on the helmet; defendant was armed with a stick and trying to protect herself; he saw nothing to justify the officer striking the windshield. Corey admitted that the first blow between defendant and the

---

[1]Injuries sustained by Officer Petrasich from blows inflicted while he was alongside the truck include abrasions on both hands and his right wrist and on both sides of his left wrist; as a result of being run over by the truck, he received a laceration on his left shin and all the toes on his left foot were swollen and bruised; while able to walk from the scene, he limped; as a result of his injuries he had to remain off the job for two days.

officers was struck by defendant. Defendant testified she is a student at U.C.L.A. and was at Cheviot Hills Park "to protest the war in Vietnam to President Johnson" with others; she stood in the bed of a truck, which the driver intended to drive in the parade, holding an effigy or dummy representing the President; the truck was equipped with sound equipment and used to solicit participation; the windows of the truck were rolled up and the door on the driver's side was locked; ten to fifteen police officers approached the truck; one (Petrasich) appeared to be angry and began to smash the window without saying anything, then moved to the side of the truck and started smashing the side window; she was looking at him from a distance of three feet; she saw other officers jab and poke at people and one boy was hurt; she was "frightened and angry" and thought the officer "would kill the people inside," "the glass would injure the people inside" [the side window was not broken] and tried to push the policeman back; while trying to ward off the officer with a 10 to 12-foot effigy, it broke and she was left with the stick which was a part of it; she told the officer (Petrasich) to stop and pushed him back again with the stick; her object was to prevent injury to the two people inside the cab; she did not recall poking the stick at any other officer (Yturralde); [she identified herself in Exhibit 4 (photograph) as having her arms raised above her head apparently in the process of beginning a downward thrust motion, with an officer's (Yturralde) hand raised upward toward her] ; she did not recall how many officers she struck at the time nor how many blows she directed to the police; she was struck on the head by Petrasich, grabbed out of the truck by an officer, thrown to the ground and handcuffed; she recognized Petrasich as an on-duty police officer but had not known that his foot was under the wheel of the truck or that he was in any pain or difficulty.

On October 20, 1967, the trial judge suspended proceedings and placed defendant on probation for three years on certain conditions, one of which, according to order made in open court, was "that she not take an active or official part in any other demonstrations of this kind during the period of probation"; according to the judgment she was "Not to partici-pate actively in demonstrations involving sit-down, road-blocking, et cetera." Thereafter on January 8, 1968, because of her active participation in a demonstration outside of the U.C.L.A. Placement Center following a visit from the Dow Chemical Company job interviewer, probation was revoked

and defendant was sentenced to 30 days in the county jail.

Appellant's main contention is that the condition of probation proscribing participation in demonstrations is unreasonable and, therefore, unlawful as having no reasonable relationship to the offense, being vague, forbidding conduct not in itself criminal, not reasonably related to future criminality and violative of the First Amendment rights. ■ Her argument, indeed her whole appeal, is predicated on the premise that her attack on the officers was the result of her fear that they would injure her and the occupants of the cab of the truck. This was her claim in the trial court but the judge simply was not impressed with the verity of her testimony and rejected her reasons for assaulting the officers and her defense. ■ It is the exclusive province of the trial judge to determine the credibility of witnesses and the truth or falsity of the facts upon which a determination depends (*People* v. *Lyons*, 47 Cal.2d 311, 321 [303 P.2d 29]) ; it is not for this court to determine conflicts in, or to choose between inferences which reasonably may be drawn from, the evidence. (*People* v. *Hills*, 30 Cal.2d 694, 701 [185 P.2d 11].) ■ If the circumstances reasonably justify the trial court's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment. (*People* v. *Robillard*, 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086] ; *People* v. *Love*, 53 Cal.2d 843, 850-851 [3 Cal.Rptr. 665, 350 P.2d 705] ; *People* v. *Daugherty*, 40 Cal.2d 876, 884-886 [256 P.2d 911] ; *People* v. *Newland*, 15 Cal.2d 678, 680-683 [104 P.2d 778].) ■ At this stage the test is not whether the evidence may be reconciled with innocence but whether there is substantial evidence in the record on appeal to warrant the inference of guilt drawn by the trier below. (*People* v. *Saterfield*, 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266] ; *People* v. *Hillery*, 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382].) ■ We refrain from again reciting the evidence, but viewing the same in a light most favorable to respondent (*People* v. *Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]) and presuming in support of the judgment the existence of every fact the trier could reasonably deduce therefrom (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]), we find the evidence to be more than ample in support of the conviction of simple assault. (§ 240, Pen. Code.)

The defense advanced in the trial was based on sections 692,

693 and 694, Penal Code;[2] They permit "[l]awful resistance to the commission of a public offense" (§ 692) by one about to be injured "[t]o prevent an offense against his person" (§ 693) and by one "in aid or defense of the person about to be injured." (§ 694.) Appellant presents a factual argument wholly inappropriate in an appellate court for the trial judge rejected her defense, and we think properly so. Defendant admitted that she knew Officer Petrasich was an on-duty police officer; the evidence, even the testimony of her own witness (Corey), establishes that she struck the first blow; the circumstances fail to present a situation justifying her asserted belief that she and those in the cab were about to be injured and her asserted intent to protect them and herself; the officers, contrary to defendant's claim that they were committing a "public offense," were engaged in the performance of their duties to maintain order, keep the line of march moving and protect the demonstrators; a road-block had developed on Motor Avenue and the officers had cleared a path for the truck; and at the time of defendant's attack on the two officers they were in the process of directing the driver out of the line of march and to move his truck from the officer's foot and ordering him out of the locked cab (the driver had refused to obey the officers' orders to drive the truck out of the line of march and to remove the vehicle from the officer's foot). Appellant does not here make the claim that she was resisting an unlawful arrest of herself or the driver nor could she under either the evidence or the law. (§ 834, Pen. Code; *People* v. *Coffey*, 67 Cal.2d 204, 221 [60 Cal.Rptr. 457, 430 P.2d 15].) There is no showing here of "the commission of a public offense" by the officers; defendant intentionally directed her resistance to the police in obstruction of their exercise of their official duties.

Without substance is appellant's claim that she was convicted on the basis of having participated in an anti-war demonstration, not the evidence. In support of her argument

[2]Section 692, Penal Code: "Lawful resistance to the commision of a public offense may be made: 1. By the party about to be injured; 2. By other parties."

Section 693, Penal Code: "Resistance sufficient to prevent the offense may be made by the party about to be injured: 1. To prevent an offense against his person, or his family, or some member thereof. 2. To prevent an illegal attempt by force to take or injure property in his lawful possession."

Section 694, Penal Code: "Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense."

that in the trial the judge was biased against her and her activities, she directs our attention to his comment[3] made after he found her guilty. This statement, purely collateral to the judge's finding of guilt, reflects neither bias nor prejudice but a comment on the evidence as he found it and a correct statement of the law; it was not inappropriate in the light of the defense offered. It appears that had he in fact been biased against defendant and/or her activities the trial judge would have found her guilty of the felonies with which she was charged, clearly supported by the evidence, instead of simple assault, a misdemeanor, and would have denied probation outright as recommended by the probation officer instead of permitting her to return to her studies.

Probation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the court (*People* v. *Wade,* 53 Cal.2d 322, 338 [1 Cal.Rptr. 683, 348 P.2d 116]; *In re Larsen,* 44 Cal.2d 642, 645 [283 P.2d 1043]; *In re Dearo,* 96 Cal.App.2d 141, 143 [214 P.2d 585]); and in granting probation the trial court has broad discretion in imposing terms and conditions thereof. (§ 1203.1, Pen. Code;[4] *People* v. *Osslo,* 50 Cal.2d 75, 103 [323 P.2d 397].) To say that the condition of probation proscribing participation in demonstrations had no reasonable relation to the crimes because her defense was not freedom of speech or association but reliance on sections 692, 693 and 694, Penal Code (defense of herself and those in the cab) thus the assaults had no relation to, and did not arise out of a demonstration (in fact, says appellant "at that point, there was no demonstration; only the preparation and

---

[3]"Viewing these [exhibits], it appears quite obvious that that is not the type of stick that is exhibited in the photograph. However, that is not the point involved.

"There seems to be a tendency today of people in this type of demonstration to wish to fight with police officers, no matter what they are doing, and if an officer wants to make an arrest today, he subjects himself to interference by all kinds of citizens who have decided that they are the protectors of the people about to be arrested and the public in general.

"This is not the law of this State or in this country, and if there is no law and order—if there is no police protection—these people who are complaining about it will be in a sad state of affairs, I can assure you."

[4]Section 1203.1, Penal Code, provides in pertinent part: "The court may impose and require any or all of the above-mentioned terms of imprisonment, fine and conditions and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer. . . ."

assembling for one") is to ignore the realities of the situation and the rules on appeal. Admittedly defendant was "there to protest the war in Vietnam to President Johnson" "with other persons assembled in the park"; she was standing in the bed of a truck which was being used to solicit demonstrators and which was northbound on Motor Avenue moving toward the hotel; she was "holding an effigy of President Johnson"; and there were several thousand people around the truck all participants in the demonstration. It is undisputed that the uniformed officers, assigned to "crowd control," were officially present on Motor Avenue during a roadblock caused by thousands of demonstrators of which defendant was one; and the evidence shows that defendant assaulted two of the officers while they were in the performance of their duties—to protect the thousands of demonstrators from each other and from their vehicles, keep the line of march moving, maintain order and provide security to the President of the United States. It matters none that the crowd had not yet reached the hotel where it was hoped the President would observe their protest, for long before her attack on the officers the demonstrators had assembled in Cheviot Park for the purpose of the protest, had moved out of the driveway from the park onto Motor Avenue and were proceeding northbound on Motor Avenue toward the hotel. For all practical purposes an assemblage of thousands of people moving en masse completely blocking the road and carrying effigies, signs and placards protesting the war is part and parcel of the demonstration; and all of the evidence points to defendant's assault on the two officers in relation to and arising out of the same.

A reading of the record makes the purpose of the disputed condition obvious. Since defendant was guilty of crimes growing out of a demonstration and had suffered a prior conviction arising out of one, it was not improper that restraint was placed on such activity. (*People* v. *Osslo,* 50 Cal.2d 75, 103 [323 P.2d 397].) From her conduct in the June 20, 1967, demonstration, which the trial judge assigned to her youth, lack of emotional maturity, exercise of poor or any judgment, and lack of regard for the rights and property of others,[5] he

---

[5] "Well, this is the second time you have been involved in one kind of a proceeding or another, and at your age, if you build up this kind of a background, it isn't going to be particularly helpful to you. It indicates a lack of emotional stability. . . .

"You have indicated that under the stress and strain and emotional involvement, you don't have very good judgment. You probably have

correctly assessed defendant's proclivities when involved with others in a protest or demonstration. The clear purpose of restraining her from active participation in future demonstrations was to protect her from her own irresponsible conduct when involved in emotionally charged situations which she seems to be too immature to handle. *People* v. *Dominguez,* 256 Cal.App.2d 623 [64 Cal.Rptr. 290], relied upon by appellant, is unlike the instant case. The condition of probation imposed on Dominguez, who had been convicted of second degree robbery, was that she refrain from becoming pregnant without being married. The court held, and properly so, that ''Appellant's future pregnancy was unrelated to robbery.'' (P. 627.)

■ In the light of the trial court's detailed explanation to defendant and her counsel, we find no support for the claim that the condition was vague and indefinite making it impossible for her to know precisely what it covered. While perhaps emotionally immature and irresponsible in her conduct under certain circumstances, defendant was a 23-year-old, intelligent, well-educated college student in her last semester in U.C.L.A., about to receive her degree in sociology ''with plans to practice in that profession''; and the colloquy[6] between the judge and defense counsel leaves little doubt that defendant well knew and understood the condition and the activity that might subject her to revocation action.

Explicit in the record is the judge's motivation in imposing

good judgment otherwise if you calmly sit down and analyze and discuss the problem. . . .

''. . . I think it is about time that you began to think of your rights and other peoples' rights as a mature, adult, which you are supposed to be, not an emotional child. . . .

''I don't expect her to engage officially in them because when she does she gets so emotionally involved that she doesn't have, not only good judgment, she has no judgment, which is evidenced by what she did here.''

[6]After a lengthy discussion the judge imposed the condition ''that she not take an active or official part in any other demonstrations of this kind during the period of probation'' and when asked by defense counsel to explain ''demonstrations of this kind,'' the judge said: ''I have in mind—and I don't intend to write her dialogue or get into a discussion of semantics. This is a highly intelligent young lady.

''I mean she cannot take an active part in sit-downs, demonstrations where she destroys other peoples' egress and ingress; where she can't be making speeches, creating the demonstrations.

''If she wants to go on the sidelines and observe—if she wants to attend a meeting and listen to somebody else's speeches or rantings, she may do so, but I don't expect her to engage officially in them because when she does she gets so emotionally involved that she doesn't have, not only good judgment, she has no judgment, which is evidenced by what she did here.''

the condition reasonably relating to the crimes of which she was convicted and reasonably relating to future activities which under certain circumstances can well constitute criminal conduct. (See Pen. Code, §§ 370, 416, 418-420, 558, 558.1, 587b, 602, 602.5, 602.7, 602.9.) However, we know of no requirement that for the condition to be valid the conduct proscribed be of an illegal nature—it is reasonable and valid if the conduct it forbids, even if lawful in itself, is conducive to future criminal activity of the same kind of which probationer was convicted. Similarly valid are conditions forbidding a probationer from associating with named persons or a class of persons, engaging in certain businesses (*People* v. *Osslo,* 50 Cal.2d 75, 103 [323 P.2d 397]; *People* v. *Bowley,* 230 Cal.App.2d 269, 271-272 [40 Cal.Rptr. 859]; *People* v. *Caruso,* 174 Cal.App.2d 624, 647 [345 P.2d 282]) or professions (*People* v. *Frank,* 94 Cal.App.2d 740, 741-742 [211 P.2d 350]), frequenting certain places, having certain properties under his control (*People* v. *Stanley,* 162 Cal.App.2d 416, 420-421 [327 P.2d 973]), etc., all conduct in itself valid and in which he ordinarily would have the right to engage but which, under the particular circumstances of the case, is deemed by the court to be conducive to activities of a criminal nature similar to those of which he was convicted.

By denoting participation in demonstrations an exercise of free speech and association, appellant seeks to persuade us that the conditon of probation proscribing active participation in demonstrations is a violation of her First Amendment rights. At the outset, it should be noted that the judge did not bar her from peaceful attendance at gatherings or speeches or the exercise of free speech and association; but he did warn her that the exercise of her own rights does not include a destruction of the rights of others.[7] Commenting on her conceded lack of good judgment and emotional stability under the stress and strain of the emotional involvement of demonstrations, the judge imposed the condition "That she not take an active or official part in any other demonstrations of this kind during the period of probation . . . ," and then proceeded to explain what it encompassed. Surely the condition that she not "participate actively in demonstrations

---

[7] "You have a right to free speech, for example, but that doesn't mean that you can stand up in front of my home or Mr. Manes' home and say we are thieves, just because you have a right to free speech.

"Free speech doesn't mean you can yell 'Fire' in a crowded theatre, . . . in order to protect your rights, you must respect the rights of others, . . ."

involving sit-down, road-blocking, et cetera'' does not proscribe her freedom of speech and association under the First Amendment. Further, whether, in a protest or dissent, the right of free speech or association is exercised in such a way as to bring the protestor under the shield of the constitutional guarantees must depend upon the circumstances—what is said, the place where it is uttered, the purpose of the utterance, the manner in which it is uttered, the size of the assemblage and its purpose, and whether the utterance is accompanied by activities such as blocking movement of traffic, trespassing on public or private property, interfering with the rights of others, preventing ordinary use of premises by an occupant, physically attacking law enforcement officers, etc. We cannot hold under the circumstances of this case that the condition of probation in any manner abridges defendant's First Amendment freedoms. Finally, the record shows that defendant had suffered a prior misdemeanor conviction arising out of a demonstration at the National Guard in Van Nuys. The probation department recommended that probation be denied because ''defendant probably would not be responsive to a program of counseling and supervision.'' However, the judge placed her on probation to give her the opportunity of finishing college; a fine was imposed as were certain terms, one of which was that she not actively participate in demonstrations. At that time defendant had the choice of accepting the benefits and restraints of probation or a jail sentence. ''The granting of probation is entirely within the sound discretion of the trial court; a defendant has no right to probation; he does have the right, if he feels that the terms of probation are more harsh than the sentence imposed by law, to refuse probation and undergo such sentence. (*People* v. *Frank* (1949) 94 Cal.App.2d 740, 741-742 [211 P.2d 350].)'' (*People* v. *Osslo*, 50 Cal.2d 75, 103 [323 P.2d 397].)

▮▮ Several months later defendant was cited for a violation of probation—''On Monday, December 4, 1967, about 40 students staged a peaceful protest outside of the U.C.L.A. Placement Center following a visit from the Dow Chemical Company job interviewer earlier in the day. They carried balloons with 'Peace on Earth, Stop the War in Viet Nam'.'' Attached to the probation report is a news item appearing in the Evening Outlook of December 5, 1967 which included a photograph of defendant blowing up balloons; it reported that ''about 40 students gathered at noon outside the [U.C.L.A. placement] center—the scene of scuffles with campus police during four separate demonstrations against Dow

recruiters last month . . . Dow recruiters completed their interviews at 11:30 a.m. and left the campus at noon when the anti-war rally started." The trial judge revoked probation because of her active participation "during demonstrations against Dow Chemical Co. at U.C.L.A. Placement Center"—a protest against the war in Vietnam and Dow's manufacture of jelly petroleum used in napalm bombs in Vietnam. "I told her because of her background she had bad judgment or no judgment at all and that she cannot participate in these activities during the period of this probation."[8] We find no abuse of the trial court's discretion in revoking probation.

Appellant's claim that sections 242 and 243, Penal Code, are unconstitutional in providing greater punishment for battery against a police officer than for simple battery, merits no discussion. While originally she was charged with two counts of battery upon a peace officer and the trial judge felt that "this is, in fact, a felony," defendant was actually convicted of two counts of simple assault in violation of section 240, Penal Code, a misdemeanor.

The judgment and order are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 27, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 29, 1969. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

[8] "It isn't the blowing up of a balloon. A child blows up a balloon, but that isn't what you were doing. You were taking part in an activity which I told you not to take part. I told you you could not take any active part in any of these demonstrations."